ALPHA PORTLAND CEMENT COMPANY *vs.* COMMONWEALTH.

Suffolk.    November 22, 1922. — April 16, 1923.

Present: RUGG, C.J., DE COURCY, CROSBY, & CARROLL, JJ.

*Tax*, Excise on foreign corporation. *Interstate Commerce. Corporation*, Taxation. *Constitutional Law*, Taxation.

The legislation set forth in G. L. c. 63, §§ 30–43, 52, constitutes an effort on the part of the General Court on the one hand to avoid a basis for taxation of foreign corporations offensive to limitations imposed upon the power of the State by the Constitution of the United States, and on the other hand to minimize the preferences in favor of foreign corporations revealed by the practical operation of corporation tax laws theretofore in force. Per RUGG, C. J.

The tax law embodied in G. L. c. 63, §§ 30–43, 52, placing as it does both domestic and foreign corporations on common ground as to taxation except so far as essential differences require different treatment in details, follows the policy established in this Commonwealth for many years of levying an excise instead of a property tax on corporate franchises and corporate transaction of business. Per RUGG, C. J.

The excise imposed by G. L. c. 63, §§ 39–43, upon foreign corporations doing business in this Commonwealth is intended to be measured solely by the property and net income fairly attributable to the business done by them within this Commonwealth and is in place of any other tax on personal property within the Commonwealth from which, except as to machinery used in manufacture or in supplying and distributing water, foreign corporations are expressly exempted by G. L. c. 59, § 5, cl. 16.

The excise upon a foreign corporation having a usual place of business in this Commonwealth used by it solely for interstate commerce, which is plainly provided for by the language of G. L. c. 63, §§ 39–43, rightly may be levied, it not being repugnant to provisions of the Federal Constitution either by reason of the method of measuring the valuation of the "corporate excess employed within the Commonwealth," as defined by § 30, cl. 4, of the statute, which is one factor forming the basis for the computation of the tax, or by reason of the use, as a second factor in such computation, of the amount of the net income of the corporation from business transacted in this Commonwealth.

The tax above described considered as a whole with both its main factors is general in nature and reasonable in amount and violates no guaranty established by the Constitution of the United States.

A tax, levied under the statute above described upon a foreign corporation with a usual place of business in this Commonwealth which it used solely for the purposes of interstate commerce, was in the amount of $800.45. The only property of the corporation in the Commonwealth was its office furniture, valued at $573. Its gross receipts were $12,774,825, and its total net income was $1,148.041. Attributable to business in this Commonwealth were gross receipts of $424,982, and net profits of $15,370. Wages paid to employees in the Commonwealth were considered and included in them were wages paid for services rendered by salesmen going also to other States. The validity of the computation being raised by a petition under G. L. c. 63, § 77, it was *held,* that

(1) A contention of the petitioner that its property outside the Commonwealth had been included in the tax and hence that it had been deprived of its property without due process of law, contrary to the Fourteenth Amendment of the United States Constitution, was without merit;

(2) The question was not whether a subsidiary percentage standing alone may impinge upon property outside the Commonwealth, but whether the use of all of the percentages makes the final result a tax which violates constitutional guaranties;

(3) Excises may be measured to some extent by property not subject to direct taxation;

(4) It did not appear that the proportion of net income ultimately allocated to this Commonwealth was in excess of a just amount;

(5) The inclusion in the computation of wages paid salesmen who operated in other States was not sufficient alone to make the tax invalid.

PETITION, filed in the Supreme Judicial Court on November 30, 1921, under G. L. c. 63, § 77, for recovery of a tax of $800.45 alleged to have been assessed to the petitioner, a foreign corporation, under the provisions of G. L. c. 63, and St. 1921, cc. 361, 493, and paid by it under protest.

The case was reserved by *Crosby*, J., for determination by the full court upon the pleadings and an agreed statement of facts. Material facts are described in the opinion.

Relevant statutory provisions of G. L. c. 63, are as follows:

"Section 30.   When used in this section and sections thirty-one to fifty-two, inclusive, the following terms shall have the following meanings:

"1. 'Domestic business corporation', every corporation organized under or subject to chapter one hundred and fifty-six.

"2. 'Foreign corporation', every corporation, association or organization established, organized or chartered under laws other than those of the Commonwealth, for purposes for which domestic corporations may be organized under chapter one hundred and fifty-six, which has a usual place of business in this Commonwealth, or is engaged here, permanently or temporarily, in the construction, erection, alteration or repair of a building, bridge, railroad, railway or structure of any kind.

"3. 'Corporate excess', in the case of a domestic business corporation, the fair cash value of all the shares constituting the capital stock of a corporation on the first day of April when the return called for by section thirty-five is due, less the value of the following:

"(a) The works, structures, real estate, machinery, poles, underground conduits, wires and pipes owned by it within the Commonwealth subject to local taxation, except such part of said real estate as represents the interest of a mortgagee.

"(b) Securities, the income of which, if any, if received by a natural person resident in this Commonwealth, would not be liable to taxation, except shares in national banks and voluntary associations, trusts and partnerships.

"(c) Its real estate, machinery, merchandise and other tangible property situated in another State or country, except such part thereof as represents the interest of a mortgagee.

"(d) If any portion of its cash and accounts and bills receiv-

able, excluding notes, is attributable to an office outside the Commonwealth, the same proportion of its cash and accounts and bills receivable, excluding notes, which its real estate, machinery and merchandise situated in another State or country bear to its total real estate, machinery and merchandise, to the extent that such proportion fairly represents, in the judgment of the commissioner, the amount which is properly allocable to such other State or country.

"4. 'Corporate excess employed within the Commonwealth' by a foreign corporation, such proportion of the fair cash value of all the shares constituting the capital stock on the first day of April when the return called for by section thirty-five is due as the value of the assets, both real and personal, employed in any business within the Commonwealth on that date, bears to the value of the total assets of the corporation on said date, less the value of the following:

"(a) Works, structures, real estate, machinery, poles, underground conduits, wires and pipes owned by it within the Commonwealth subject to local taxation, except such part of said real estate as represents the interest of a mortgagee;

"(b) Securities held in the Commonwealth, the income of which, if any, if received by a natural person resident therein, would not be liable to taxation, except shares in national banks, voluntary associations, trusts and partnerships. In determining the proportion of assets employed within the Commonwealth, the commissioner may include such bank deposits in other States as are employed principally in the conduct of the business in the Commonwealth.

"5. 'Net income', except as otherwise provided in sections thirty-four and thirty-nine, the net income for the taxable year as required to be returned by the corporation to the federal government under the federal revenue act of nineteen hundred and eighteen, and, in the case of a domestic business corporation, such interest and dividends, not so required to be returned as net income, as would be taxable if received by an inhabitant of this Commonwealth; less, both in the case of a domestic business corporation and of a foreign corporation, interest, so required to be returned, which is received upon bonds, notes and certificates of indebtedness of the United States.

"6. 'Taxable year', the fiscal or calendar year for which the corporation was required to make its last return to the federal government due prior to April first of the year in which the tax is to be assessed, or, if such return was for a fractional period, a full year, including and ending with such fractional period.

"Section 31. In determining the corporate excess of a domestic business corporation, or the corporate excess employed within the Commonwealth by a foreign corporation, there shall not be deducted the value of shares in national banks and in voluntary associations, trusts and partnerships, nor of other securities, the income of which, if owned by a natural person resident in this Commonwealth, would be liable to taxation, nor shall there be deducted the value of any shares of stock of the corporation itself owned directly or indirectly by it or for its benefit; and the commissioner, in determining for the purposes of taxation the value of the corporate excess of, or corporate excess employed within the Commonwealth by, any such corporation, shall not take into consideration any debts of the corporation unless he is satisfied that no part of such debts was incurred for the purpose of reducing the amount of taxes to be paid by it, and, in the case of a domestic business corporation which is a subsidiary of a foreign corporation or closely affiliated therewith by stock ownership, that such debts represent only the fair value of the property given therefor.

"Section 32. Except as otherwise provided in sections thirty-three and thirty-four, every domestic business corporation shall pay annually, with respect to the carrying on or doing of business by it, an excise equal to the sum of the following, provided that every such corporation shall pay annually a total excise not less in amount than one twentieth of one per cent of the fair cash value of all the shares constituting its capital stock on the first day of April when the return called for by section thirty-five is due:

"(1) An amount equal to five dollars per thousand upon the value of its corporate excess.

"(2) An amount equal to two and one half per cent of that part of its net income, as defined in this chapter, which is derived from business carried on within the Commonwealth.

"Section 33. If a domestic business corporation which is a subsidiary of a foreign corporation or closely affiliated therewith by stock ownership, is so managed that its books of account do

not show its true earnings, it shall pay as a minimum tax under this chapter an amount equal to twenty dollars per thousand on its corporate excess, unless it shall file within the first ten days of April a statement, as of April first, of its net income showing to the satisfaction of the commissioner its true earnings for its last prior fiscal year, eliminating therefrom all payments to such other corporation or its officers in excess of the fair value of the property or services given therefor.

"Section 34. If two or more domestic business corporations participated in the filing of a consolidated return of income to the federal government, the tax under paragraph (2) of section thirty-two may, at their option, be assessed upon their combined net income, which tax shall be assessed to all said corporations and collected from any one or more of them. In the case of domestic business corporations thus affiliated and not electing, under the foregoing provision, to be assessed upon their combined net income, and in the further case of one or more domestic business corporations filing with one or more foreign corporations a consolidated return of net income to the federal government, each such domestic business corporation shall file with the commissioner, as a part of its return required by this chapter, a statement of net income in such form as he may prescribe, showing its gross income and 'deductions in accordance with the law and regulations governing the usual federal returns of corporations not thus affiliated, and the net income thus shown, after making deductions therefrom and additions thereto as provided in paragraph five of section thirty, shall be the 'net income' under this chapter.

"Section 35. Every domestic business corporation shall, within the first ten days of April, make a return as of April first, sworn to by its treasurer or assistant treasurer, or in their absence or incapacity by any other principal officer, in such form as the commissioner prescribes, giving (a) a copy of such parts as he may designate of the federal return or returns for the year on the income of which the tax is to be assessed, which it has made singly or with one or more other corporations, (b) such other data as he requires to determine the proportion of net income derived from business carried on within the Commonwealth, (c) such information as he requires for the determination of the corporate excess.

Whenever the time for filing its federal return has been extended, the commissioner may extend the time for filing such return.

"Section 36. If the assessment made by the federal government is based upon a net income greater or less than the net income returned by said corporation, or if an additional assessment is at any time made on the ground that the net income was incorrectly returned in the first instance, or if, after the tax as assessed is paid to the federal government, any part of such tax is refunded, the corporation, within ten days after the receipt of such notice of said fact, shall make return on oath to the commissioner of the amount by which the net income originally returned differs from the net income on which the tax was computed by the federal government upon the latest determination by it of the proper tax, and of the facts giving rise to the difference. If upon such facts an additional tax is due the Commonwealth, the commissioner shall assess the additional tax, and the corporation shall, within thirty days after receipt of notice from the commissioner of the amount thereof, pay such additional tax. If upon said facts a less tax is due the Commonwealth than that paid by the corporation, the State Treasurer shall, upon certification of the commissioner, repay within thirty days such difference without any further statutory appropriation therefor.

"Section 37. The commissioner shall determine, in the manner provided in this and the following section, the part of the net income of a domestic corporation derived from business carried on within the Commonwealth. The following classes of income shall be allocated as follows:

"(a) Interest and dividends which would be taxable under section one of chapter sixty-two, if received by an inhabitant of the Commonwealth, shall be allocated to this Commonwealth.

"(b) Gains realized from the sale of capital assets, if such assets consist of intangible property or if they consist of real estate or tangible personal property situated in the Commonwealth, shall be allocated to this Commonwealth.

"(c) Gains received from the sale of capital assets, if such assets consist of real estate or tangible personal property situated outside the Commonwealth, shall not be allocated in any part to this Commonwealth.

"Section 38. Income of the classes described in the preceding

section having been allocated, the remainder of the net income as defined in section thirty shall be allocated as follows:

"1. If the corporation carries on no business outside the Commonwealth, the whole of said remainder shall be allocated to this Commonwealth.

"2. If the corporation carries on any business outside the Commonwealth, the said remainder shall be divided into three equal parts:

"(a) Of one third, such portion shall be attributed to business carried on within the Commonwealth as shall be found by multiplying said third by a fraction whose numerator is the value of the corporation's tangible property situated within the Commonwealth and whose denominator is the value of all the corporation's tangible property wherever situated.

"(b) Of another third, such portion shall be attributed to business carried on within the Commonwealth as shall be found by multiplying said third by a fraction whose numerator is the expenditure of the corporation for wages, salaries, commissions or other compensation to its employees, and assignable to this Commonwealth as hereinafter provided, and whose denominator is the total expenditure of the corporation for wages, salaries, commissions or other compensation to all its employees.

"(c) Of the remaining third, such portion shall be attributed to business carried on within the Commonwealth as shall be found by multiplying said third by a fraction whose numerator is the amount of the corporation's gross receipts from business assignable to this Commonwealth as hereinafter provided, and whose denominator is the amount of the corporation's gross receipts from all its business.

"3. In a case where only two of the foregoing three rules are applicable, the said remainder of net income of the corporation shall be divided into two equal parts only, each of which shall be apportioned in accordance with one of the remaining two rules. If only one of the three rules is applicable, the part of the net income received from business carried on within the Commonwealth shall be determined solely by that rule.

"4. The value of the corporation's tangible property for the purposes of this section shall be the average value of such property during the taxable year.

"5.   The amount assignable to this Commonwealth of expenditure of the corporation for wages, salaries, commissions or other compensation to its employees shall be such expenditure for the taxable year as represents the compensation of employees not chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside the Commonwealth.

"6.   The amount of the corporation's gross receipts from business assignable to this Commonwealth shall be the amount of its gross receipts for the taxable year from (*a*) sales, except those negotiated or effected in behalf of the corporation by agents or agencies chiefly situated at, connected with or sent out from premises for the transaction of business owned or rented by the corporation outside the Commonwealth and sales otherwise determined by the commissioner to be attributable to the business conducted on such premises, (*b*) rentals or royalties from property situated, or from the use of patents, within the Commonwealth; provided, that upon application by a corporation which owns or controls substantially all the capital stock of another corporation, or by the corporation so owned or controlled, the commissioner may impose the tax provided for by this chapter upon the income of the two corporations jointly in the same manner as though they were a single corporation, or may, in such other manner as he shall determine, equitably adjust the tax of the applying corporation.

"7.   If a corporation maintains an office, warehouse or other place of business in a State other than this Commonwealth for the purpose of reducing its tax under this chapter, the commissioner shall, in determining the amount of its gross receipts from business assignable to this Commonwealth, include therein the gross receipts from sales attributed by the corporation to the business conducted at such place of business in another State.

"8.   In the case of consolidated returns of net income, the commissioner shall allocate such income, so far as practicable, in accordance with the above rules.

"9.   A rule shall not be deemed to be inapplicable merely because all the tangible property or the expenditure of a corporation for wages, salaries, commissions or other compensation, or

the gross receipts of the corporation, are found to be situated, incurred, or received without the Commonwealth.

"10. From the net income allocated to this Commonwealth there shall be deducted the same proportion thereof which the fair cash value of machinery owned by the corporation and used in manufacturing in the Commonwealth bears to its total assets employed therein, and the amount remaining shall be its net income subject to tax under this chapter.

"Section 39. Every foreign corporation shall pay annually, with respect to the carrying on or doing of business by it within the Commonwealth, an excise equal to the sum of the following, provided that every such corporation shall pay annually a total excise not less in amount than one twentieth of one per cent of such proportion of the fair cash value of all the shares constituting its capital stock as the assets, both real and personal, employed in any business within the Commonwealth on April first following the close of the taxable year, bear to the total assets of the corporation employed in business on said date:

"(1) An amount equal to five dollars per thousand upon the value of the corporate excess employed by it within the Commonwealth.

"(2) An amount equal to two and one half per cent of that part of its net income, as defined in section thirty and in this section, which is derived from business carried on within the Commonwealth.

"If two or more foreign corporations doing business in this Commonwealth participated in the filing of a consolidated return of income to the federal government, the tax under paragraph (2) above may, at their option, be assessed upon their combined net income, in which case the tax shall be assessed to all said corporations and collected from any one or more of them. Foreign corporations thus affiliated and doing business in this Commonwealth, which do not elect, under the foregoing provision, to be assessed upon their combined net income, and all other foreign corporations doing business in this Commonwealth, which have filed with one or more corporations not subject to this section a consolidated return of net income to the federal government, shall each file with the commissioner, as a part of the return required by this chapter, a statement of net income in such form

as he may prescribe, showing the gross income and deductions in accordance with the law and regulations governing the usual federal returns of corporations not thus affiliated; and the net income thus shown, after making deductions therefrom and additions thereto as provided in paragraph five of section thirty, shall be the 'net income' under this chapter.

"Section 40.   Every foreign corporation shall make returns as provided in sections thirty-five and thirty-six; and all provisions of said sections shall apply to such corporations, except that the term 'corporate excess' in said section thirty-five shall, in the case of a foreign corporation, mean the corporate excess employed by it within the Commonwealth.

"Section 41.   The commissioner shall determine in the manner provided in this section the part of the net income of a foreign corporation derived from business carried on within the Commonwealth.

The following classes of income shall be allocated as follows:

"(a) Gains realized from the sale of capital assets, if such assets consist of real estate or tangible personal property situated in the Commonwealth, shall be allocated to this Commonwealth.

"(b) Interest received from any corporation organized under the laws of the Commonwealth or from any association, partnership or trust having transferable shares and having its principal place of business in the Commonwealth, or from any inhabitant of the Commonwealth, except interest received on deposits in trust companies or in national banks doing business.in the Commonwealth, shall be allocated to this Commonwealth.

"(c) Gains realized from the sale of capital assets other than those named in paragraph (a) above shall not be allocated in any part to this Commonwealth.

"Income of the foregoing classes having thus been allocated, the remainder of the net income as defined in section thirty shall be allocated as follows:

"If a foreign business corporation carries on no business outside this Commonwealth, the whole of said remainder shall be allocated to this Commonwealth.

"If a foreign business corporation carries on any business outside this Commonwealth, the net income taxable under this chapter shall be determined as provided in section thirty-eight.

"Section 42. A foreign corporation carrying on part of its business outside the Commonwealth may, in lieu of the allocating method required by the preceding section for determining the amount of business assignable to this Commonwealth, refuse to accept such determination by notification thereof to the commissioner on or before the time when its income tax return under this chapter is due to be filed. Such a foreign corporation shall, within thirty days thereafter, file with the commissioner, under oath of its treasurer, a statement in such detail as the commissioner shall require, showing the amount of its annual net income derived from business carried on within the Commonwealth. The commissioner may require such further information with reference thereto as he may deem necessary for the assessment of the tax, and shall determine the proportion of the net income received from business carried on within the Commonwealth.

"Section 43. After determining the amount of tax due from any foreign corporation under paragraph (2) of section thirty-nine, the commissioner shall then credit the corporation with a sum equal to five per cent of the dividends paid by it, during the previous calendar year, to inhabitants of this Commonwealth, and the amount then remaining due shall be the amount of tax to be levied upon the corporation under said paragraph; provided, that if more than one half of the capital stock of any such corporation is owned by another foreign corporation not subject to taxation under sections thirty to fifty-one, inclusive, but has stockholders who are inhabitants of this Commonwealth and are subject to taxation upon their income under section one of chapter sixty-two, such corporation, upon filing with the commissioner such information as he shall deem necessary for the purpose, shall be credited with a sum equal to five per cent of such a proportion of its total dividends as will prevent double taxation of the income of the corporation and of the dividends of such other foreign corporation actually taxed to inhabitants of this Commonwealth."

"Section 52. If the excise imposed by section thirty-two on domestic business corporations, or that imposed by section thirty-nine on foreign corporations, is declared unconstitutional by a final judgment, order or decree of the United States Supreme Court or the Supreme Judicial Court of the Commonwealth, sections thirty to fifty-one, inclusive, shall be null and void, and

all laws repealed or made inoperative by chapter three hundred and fifty-five of the General Acts of nineteen hundred and nineteen shall thereupon be revived and continue in full force and effect as if the said chapter had not been enacted. In such case the commissioner and local assessors shall forthwith assess all taxes that have become due under such prior laws, and the time for making any assessment· or performing any other duty imposed or privilege granted by such laws shall be extended for a period of six months after the date when they are thus determined to be in force, and the time within which corporations may apply by petition to the Supreme Judicial Court under section seventy-seven for the abatement of the excise imposed by section thirty-two, or of that imposed by section thirty-nine, shall be extended for the same period. If any part, section or subdivision of said sections thirty to fifty-one, inclusive, other than the provisions in sections thirty-two and thirty-nine imposing an excise, shall be declared unconstitutional, the validity of the remaining parts of said sections thirty to fifty-one, inclusive, shall not be affected thereby."

Relevant provisions of St. 1921, c. 361, are as follows:

"Section 1. The tax assessed in the year nineteen hundred and twenty-one in accordance with the provisions of section thirty-two of chapter sixty-three of the General Laws and the tax assessed against any foreign corporation in accordance with the provisions of section thirty-nine of said chapter sixty-three shall be not less than an amount equal to one twentieth of one per cent of the said corporation's gross receipts from business assignable to this Commonwealth as defined in clause six of section thirty-eight of said chapter sixty-three.

"Section 2. All provisions of chapters fifty-eight and sixty-three of the General Laws relative to assessment, collection, payment, abatement, penalties, distribution and administration shall, so far as pertinent, be applicable to taxes under this act."

Relevant provisions of St. 1921, c. 493, are as follows:

"Section 1. Every corporation subject to the provisions of sections thirty to sixty, inclusive, of chapter sixty-three of the General Laws, shall pay, in addition to all other taxes, an excise tax at the rate of three quarters of one per cent of its net income as herein defined and apportioned to this Commonwealth. 'Net

income' shall mean the net income of said corporations for the period covered by their return of income to the federal government due next prior to April first, nineteen hundred and twenty-one, subject to the provisions of the following sections."

"Section 5. The proportion of the net income taxable under this act in cases of corporations carrying on business outside of this Commonwealth shall be as follows: — In the case of a corporation deriving profits principally from the ownership, sale or rental of real estate, and in case of a corporation deriving profits principally from the sale or use of tangible personal property owned by it, such proportion as the fair cash value of its real estate and tangible personal property in this Commonwealth on April first of the current year is to the fair cash value of the entire real estate and tangible personal property owned by it on that date with no deduction on account of any encumbrance thereon.

"In the case of a corporation deriving profits principally from the holding or sale of intangible property such proportion as its gross receipts assignable to this Commonwealth for the year covered by its return is to its gross receipts for such year within and without the Commonwealth.

"In case neither of the above methods is applicable, the commissioner of corporations and taxation shall determine, in such manner as he deems equitable, the proportion of the net income received from business carried on within this Commonwealth.

"The apportionment of net income to this Commonwealth as provided in this section shall apply to all corporations, domestic or foreign, which are taxable under this act."

*J. G. Palfrey*, for the petitioner.

*A. Lincoln*, Assistant Attorney General, for the Commonwealth.

RUGG, C. J. This is a petition under G. L. c. 63, § 77, by a foreign corporation having a place of business in this Commonwealth for the abatement of taxes which it contends were illegally exacted for the year 1921. The case was submitted on agreed facts and reserved for our determination. The petitioner is a corporation organized under the laws of New Jersey. Its business is the manufacture and sale of cement. Its principal office is at Easton, Pennsylvania. Its mills are located in several other states outside of Massachusetts, from which shipments are made to various parts of the United States and to foreign countries. It main-

tains an office in Boston in charge of a district sales manager, with a clerk, where its correspondence and other natural business activities in connection with the receipt of orders and shipments of goods for the New England states are conducted. The office is used as headquarters for travelling salesmen, who solicit orders in Massachusetts and the other New England states. Orders so taken are transmitted at the Boston office by mail to the principal office at Easton, Pennsylvania, where exclusively they are passed upon, and if accepted, the goods are shipped and invoices sent directly to the customer. Remittances usually are made to the petitioner at Easton, though in exceptional instances prepayments or collections are made by the salesmen and immediately transmitted to Easton. No samples or other merchandise are kept in this Commonwealth. The only property of the petitioner in Massachusetts is its office furniture, valued at $573. It maintains no bank account here, its salaries and office rent being paid from its principal office. Incidental expenses are paid from an account not exceeding $1,000 kept by the district sales manager in his own name. No corporate books, records, or meetings are in Massachusetts. There is no controversy as to the facts, valuations or computation of the tax. The issues between the parties relate solely to the correct interpretation of our corporate tax law as to foreign corporations and to the constitutionality of that law in its application to the petitioner.

The tax here in question was assessed under our corporation tax law now embodied in G. L. c. 63, and a slight additional tax under St. 1921, c. 493. The record shows that the amount of the tax was not affected by St. 1921, c. 361.

Domestic and foreign business corporations as distinguished from banking and insurance corporations and from public service corporations are defined and provision made for their taxation in G. L. c. 63, §§ 30–43, those relating particularly to foreign corporations being §§ 39–43. See also § 52. These relevant sections and St. 1921, c. 493, are printed above.

It is manifest from an examination of these sections (first enacted in St. 1919, c. 355) that the Legislature, departing from earlier corporation tax laws, has attempted to adopt a general principle whereby domestic and foreign corporations shall be treated with fairness on the same footing as to taxation. These

sections constitute an effort on the part of the General Court to avoid on the one hand a basis for taxation of foreign corporations offensive to limitations imposed upon the power of the State by the Constitution of the United States, *International Paper Co. v. Massachusetts*, 246 U. S. 135, *Cheney Brothers Co. v. Massachusetts*, 246 U. S. 147, and to minimize on the other hand the preferences in favor of foreign corporations revealed by the practical operation of corporation tax laws hitherto in force. *S. S. White Dental Manuf. Co. v. Commonwealth*, 212 Mass. 35, 48, 49. *Judson Freight Forwarding Co. v. Commonwealth*, 242 Mass. 47, 52. This tax law, placing as it does both domestic and foreign corporations on common ground as to taxation except so far as essential differences require different treatment in details, follows the policy established in this Commonwealth for many years of levying an excise instead of a property tax on corporate franchises and corporate transaction of business. *Eaton, Crane & Pike Co. v. Commonwealth*, 237 Mass. 523.

The general scheme of this tax law is that an excise is levied on both domestic and foreign business corporations doing business in this Commonwealth. Real estate and machinery used in manufacture by such corporations alone are subject to a local property tax in the city or town where situated. All other personal property, whether tangible or intangible, is exempt from direct or local taxation. The amount of the excise tax is measured as to a foreign corporation, § 39, by the sum of "An amount equal to five dollars per thousand upon the value of the corporate excess employed by it within the Commonwealth," and "An amount equal to two and one half per cent of that part of its net income, as defined in section thirty and in this section, which is derived from business carried on within this Commonwealth," with a further provision that a minimum tax of not less than one twentieth of one per cent of such proportion of the fair cash value of its shares of capital stock as its assets employed in business in this Commonwealth bear to its total assets employed in business. "Corporate excess employed within the Commonwealth" by a foreign corporation is defined by § 30, cl. 4, to be such proportion of the fair cash value of all its shares of capital stock as the value of its real and personal assets employed in business within the Commonwealth bears to the value of its total assets on a specified

date less the value of (a) real estate and machinery with other structures not here material owned by it within the Commonwealth and subject to local taxation, and (b) securities held within the Commonwealth, the income of which if held by a natural person would not be subject to taxation with certain exceptions. "Net income" means in general the net income for the taxable year required to be returned to the federal government by the federal revenue act of nineteen hundred eighteen, less interest received on bonds, notes and certificates of indebtedness of the United States. § 30, cl. 5.

The statute is an attempt to measure the excise on foreign corporations solely by the property and net income fairly attributable to the business done within this Commonwealth. This excise tax is in place of any other tax on personal property within the Commonwealth from which, except as to machinery used in manufacture or in supplying and distributing water, foreign corporations (and also domestic corporations) are expressly exempted by G. L. c. 59, § 5, cl. 16. Comparison of the sections of the tax act relating to the taxation of domestic corporations with those relating to foreign corporations shows that the same general definitions, exemptions and principles are followed as to both, except as the inherent differences as to domicil and as to allocation of residue of net income and of corporate excess require dissimilar provisions.

It is rightly conceded by the Attorney General that the petitioner was engaged in this Commonwealth exclusively in interstate commerce. *Marconi Wireless Telegraph Co. of America* v. *Commonwealth*, 218 Mass. 558, 567 to 569. *Cheney Brothers Co.* v. *Massachusetts*, 246 U. S. 147, 153.

The question to be decided is whether a foreign corporation having a usual place of business in this Commonwealth used for interstate commerce alone is subject to taxation under the tax law. The precise point now presented for decision was left open in *Judson Freight Forwarding Co.* v. *Commonwealth*, 242 Mass. 47, although the act in general was there held to be constitutional.

As matter of verbal construction it is plain that the tax law includes a foreign corporation such as the petitioner. Confessedly the petitioner "has a usual place of business in this Commonwealth" and is actually carrying on business here. The petitioner

comes within the description of § 30, cl. 2, where foreign corpora-
tion is defined as including every corporation "chartered under
laws other than those of the Commonwealth, for purposes for
which domestic corporations may be organized under chapter
one hundred and fifty-six, which has a usual place of business in
this Commonwealth." Whether these statutory words are to be
interpreted so as to include foreign corporations engaged here
exclusively in interstate commerce depends upon the further
inquiry whether as thus construed the statute would be constitu-
tional. *Attorney General* v. *Electric Storage Battery Co.* 188 Mass.
239, 240, 241. *Baltic Mining Co.* v. *Commonwealth,* 207 Mass.
381, 390. This controversy can be settled finally only by the
Supreme Court of the United States. But it must be dealt with
by this court and considered in the light of decisions of that
tribunal, as we understand them.

The present tax act differs in its essential characteristics from
those hitherto enacted respecting foreign corporations. The
effect of St. 1903, c. 437, § 75, and St. 1909, c. 490, Part III, § 56,
was to impose excises which prescribed the terms and conditions
on which foreign corporations could do business within the Com-
monwealth, and which were in the nature of license fees as con-
ditions precedent to the doing of such business. They were
taxes upon the privilege of having an establishment for business
in Massachusetts. They were not property taxes. The right to
do business depended upon the payment of the tax, and pro-
hibitive penalties followed failure to comply with the statutes
and to make the specified payments. *Baltic Mining Co.* v. *Com-
monwealth,* 207 Mass. at page 388. Since the several States under
the Constitution of the United States have no right to impose
restrictions or regulations upon interstate commerce, it was held
that these tax statutes did not apply to corporations engaged
solely in interstate commerce at a place of business within the
Commonwealth. *Marconi Wireless Telegraph Co. of America*
v. *Commonwealth,* 218 Mass. 558, 561, 563–565, 567–569, and cases
there collected. *Old Dominion Co.* v. *Commonwealth,* 237 Mass.
269.

The present tax act imposes the excise with respect to the
carrying on of business by foreign corporations within the Com-
monwealth. It is an excise for the privilege of having a place of

business under the protection of our laws and with the financial, commercial and other advantages flowing therefrom, measured solely by the property and net income fairly attributable to the business done here by a foreign corporation.  The excise is measured by two factors, (1) the value of the corporate excess employed within the Commonwealth, and (2) the net income derived from business within the Commonwealth.

1.  The value of the corporate excess employed in the Commonwealth as a factor of the tax is not measured by the capital stock of the corporation.  If it were, it would be invalid.  *International Paper Co.* v. *Massachusetts*, 246 U. S. 135.  It is measured by the value of the property of the foreign corporation, including its franchise, employed in the Commonwealth, after certain deductions are made.  It seems to us that this factor of the tax stands under the protection of several decisions of the Supreme Court of the United States.

The right of a State to tax tangible property of a foreign corporation, not in transit but located within its borders, no matter what may be its use, is well settled.  The petitioner has a small amount of tangible personal property permanently within the Commonwealth, upon which it pays no tax except by way of this factor of the excise.

The petitioner exercises within the Commonwealth its franchise to do business as a corporation.  It did whatever was necessary to conduct a business yielding according to its return annual gross receipts assignable to Massachusetts of $424,982.70.  The facts in *Western Union Telegraph Co.* v. *Massachusetts*, 125 U. S. 530, were that an excise was levied upon a telegraph company exercising a franchise in many States by virtue of laws of the United States and having poles and wires in this Commonwealth. It there was said that the State law attempted "to ascertain the just amount which any corporation engaged in business within its limits shall pay as a contribution to the support of its government upon the amount and value of the capital so employed by it therein.  . . . The tax . . . is in effect a tax . . . on account of property owned and used . . . in the State of Massachusetts."  It was said in *Pullman's Palace Car Co.* v. *Pennsylvania*, 141 U. S. 18, a case involving the taxation of cars used in interstate commerce, at page 25, "The tax now in question is

not a license tax or a privilege tax; it is not a tax on business or occupation; . . . The tax is imposed equally on corporations doing business within the State, whether domestic or foreign, and whether engaged in interstate commerce or not." See also *Pullman Co. v. Richardson*, 261 U. S. 330. In *Atlantic & Pacific Telegraph Co. v. Philadelphia*, 190 U. S. 160, at page 163, occur these words: "The franchise of a corporation, although that franchise is the business of interstate commerce, is, as a part of its property, subject to State taxation, providing at least the franchise is not derived from the United States." In *United States Express Co. v. Minnesota*, 223 U. S. 335, at page 345, it was said, "The State must be allowed to tax the property and to tax it at its actual value as a going concern. On the other hand the State cannot tax the interstate business. The two necessities hardly admit of an absolute logical reconciliation. Yet the distinction is not without sense. When a Legislature is trying simply to value property, it is less likely to attempt to or effect injurious regulation than when it is aiming directly at the receipts from interstate commerce. A practical line can be drawn by taking the whole scheme of taxation into account."

It is manifest as matter of common business knowledge that commerce within this Commonwealth yielding to the petitioner annual gross receipts of $424,982.70 must have involved credits, bills receivable and obligations to it of considerable amounts. No contention to the contrary has been urged by the petitioner. Such credits, bills receivable and obligations might be made subject to direct taxation within the Commonwealth by appropriate legislation under numerous decisions of the United States Supreme Court. Such credits, bills receivable and obligations constitute a part of "the value of the assets" of the petitioner "employed in . . . [its] business within the Commonwealth" used as the basis of ascertaining "the corporate excess" of the petitioner "employed within the Commonwealth" upon which this factor of the excise is calculated.

This branch of the case seems to us to come within the scope of these words in *Shaffer v. Carter*, 252 U. S. 37, at page 52: "This is consonant with numerous decisions of this court sustaining State taxation of credits due to non-residents, *New Orleans v. Stempel*, 175 U. S. 309, 320, *et seq.; Bristol v. Washington County,*

177 U. S. 133, 145; *Liverpool & London & Globe Ins. Co.* v. *Orleans Assessors*, 221 U. S. 346, 354; and sustaining federal taxation of the income of an alien non-resident derived from securities held in this country, *De Ganay* v. *Lederer*, 250 U. S. 376." *Blackstone* v. *Miller*, 188 U. S. 189, 205, 206.

It appears to us that under the principle deducible from all these decisions the tax, so far as it relates to the value of corporate excess of the petitioner, rightly may be levied.

2.   The tax, as measured by the net income from business transacted in Massachusetts as a factor, is dependent upon net profits derived solely from interstate commerce.   But there is no discrimination in the statute against interstate commerce. This net income is used as a measure applicable to all corporations alike.   While not an income tax according to strict definition, in substance it affects net income alone, is measured by net income alone, is reasonable in amount and incidence, and is payable out of net income.

It was settled by *Travis* v. *Yale & Towne Manuf. Co.* 252 U. S. 60, that the income of non-residents was subject to taxation within the State where earned or accruing.   That result was reached on the ground that, except in the particular restrictions imposed by the Federal Constitution, the States have complete dominion over persons, business and property within their borders, are charged with the duty of maintaining order and establishing security for such persons, business and property, and consequently may resort to any proper form of taxation of those deriving benefits from their protection in order to defray expenses of government. In *Peck & Co.* v. *Lowe*, 247 U. S. 165, question arose as to the right of Congress, in view of the constitutional prohibition against laying a "tax or duty . . . on articles exported from any State," to tax net income derived by a domestic corporation chiefly from shipping goods to foreign countries and there selling them.   It was said, page 174, "The tax in question is unlike any of those heretofore condemned.   It is not laid on articles in course of exportation or on anything which inherently or by the usages of commerce is embraced in exportation or any of its processes.   On the contrary, it is an income tax laid generally on net incomes. And while it cannot be applied to any income which Congress has no power to tax . . . , it is both nominally and actually a general

tax. It is not laid on income from exportation because of its source, or in a discriminative way, but just as it is laid on other income. The words of the act are 'net income arising or accruing from all sources.' There is no discrimination. At most, exportation is affected only indirectly and remotely." In *Shaffer v. Carter*, 252 U. S. 37, a State statute taxing a non-resident for income derived from property and business within the State, was assailed. It was said at page 57, "It is urged that, regarding the tax as imposed upon the business conducted within the State, it amounts in the case of appellant's business to a burden upon interstate commerce, because the products of his oil operations are shipped out of the State. Assuming that it fairly appears that his method of business constitutes interstate commerce, it is sufficient to say that the tax is imposed not upon the gross receipts, as in *Crew Levick Co. v. Pennsylvania*, 245 U. S. 292, but only upon the net proceeds, and is plainly sustainable even if it includes net gains from interstate commerce. *U. S. Glue Co. v. Oak Creek*, 247 U. S. 321. Compare *Peck & Co. v. Lowe*, 247 U. S. 165." In *United States Glue Co. v. Oak Creek*, 247 U. S. 321, the distinction was pointed out between an invalid tax based on gross revenue and a valid tax based on net profits. It was said at pages 328, 329, "The correct line of distinction is so well illustrated in two cases decided at the present term that we hardly need go further. In *Crew Levick Co. v. Pennsylvania*, 245 U. S. 292, we held that a State tax upon the business of selling goods in foreign commerce, measured by a certain percentage of the gross transactions in such commerce, was by its necessary effect a tax upon the commerce, and at the same time a duty upon exports, contrary to §§ 8 and 10 of Art. 1 of the Constitution, since it operated to lay a direct burden upon every transaction by withholding for the use of the State a part of every dollar received. On the other hand, in *Peck & Co. v. Lowe, ante*, 165, we held that the Income Tax Act of October 3, 1913, c. 16, § 2, 38 Stat. 166, 172, when carried into effect by imposing an assessment upon the entire net income of a corporation, approximately three-fourths of which was derived from the export of goods to foreign countries, did not amount to laying a tax or duty on articles exported within the meaning of Art. 1, § 9, cl. 5 of the Constitution. The distinction between a direct and an indirect burden by way

of tax or duty was developed, and it was shown that an income tax laid generally on net incomes, not on income from exportation because of its source or in the way of discrimination, but just as it was laid on other income, and affecting only the net receipts from exportation after all expenses were paid and losses adjusted and the recipient of the income was free to use it as he chose, was only an indirect burden.  The difference in effect between a tax measured by gross receipts and one measured by net income, recognized by our decisions, is manifest and substantial, and it affords a convenient and workable basis of distinction between a direct and immediate burden upon the business affected and a charge that is only indirect and incidental.  A tax upon gross receipts affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise.  Conceivably it may be sufficient to make the difference between profit and loss, or to so diminish the profit as to impede or discourage the conduct of the commerce.  A tax upon the net profits has not the same deterrent effect, since it does not arise at all unless a gain is shown over and above expenses and losses, and the tax cannot be heavy unless the profits are large.  Such a tax, when imposed upon net incomes from whatever source arising, is but a method of distributing the cost of government, like a tax upon property, or upon franchises treated as property; and if there be no discrimination against interstate commerce, either in the admeasurement of the tax or in the means adopted for enforcing it, it constitutes one of the ordinary and general burdens of government, from which persons and corporations otherwise subject to the jurisdiction of the States are not exempted by the Federal Constitution because they happen to be engaged in commerce among the States."  In *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113, at page 119, it was said, "Payment of the tax is not made a condition precedent to the right of the corporation to carry on business, including interstate business.  Its enforcement is left to the ordinary means of collecting taxes.  *St. Louis Southwestern Ry. Co.* v. *Arkansas,* 235 U. S. 350, 364; *Atlantic & Pacific Telegraph Co.* v. *Philadelphia,* 190 U. S. 160, 163.  The statute is, therefore, not open to the objection that it compels the company to pay for the privilege of engaging in interstate commerce.  A tax is not obnoxious to the commerce clause merely

because imposed upon property used in interstate commerce, even if it takes the form of a tax for the privilege of exercising its franchise within the State. *Postal Telegraph Cable Co.* v. *Adams,* 155 U. S. 688, 695. This tax is based upon the net profits earned within the State. That a tax measured by net profits is valid, although these profits may have been derived in part, or indeed mainly, from interstate commerce is settled. *United States Glue Co.* v. *Oak Creek,* 247 U. S. 321; *Shaffer* v. *Carter,* 252 U. S. 37, 57." *Hump Hairpin Manuf. Co.* v. *Emmerson,* 258 U. S. 290, 294. *Attorney General* v. *Bay State Mining Co.* 99 Mass. 148.

It seems to us that the constitutionality of the statute in the particulars here assailed is sustained by the decisions of the United States Supreme Court already cited and from some of which quotations have been made. The principles there declared, as we understand them, support the validity of the tax act here involved. In reaching that conclusion we are not unmindful of all that has been said and decided in *Western Union Telegraph Co.* v. *Kansas,* 216 U. S. 1, *Looney* v. *Crane Co.* 245 U. S. 178, *Meyer* v. *Wells Fargo & Co.* 223 U. S. 298, *International Paper Co.* v. *Massachusetts,* 246 U. S. 135, *Wallace* v. *Director General of Railroads,* 253 U. S. 66, *Gillespie* v. *Oklahoma,* 257 U. S. 501. The case at bar appears to us to be governed by the other line of decisions. See 32 Harvard Law Rev. 634–640, 646–649, and cases there collected and reviewed. *Superior* v. *Allouez Bay Dock Co.* 166 Wis. 76, 80. The principle that the States can impose no direct burden upon interstate commerce, illustrated by cases like *McCall* v. *California,* 136 U. S. 104, *Norfolk & Western Railroad* v. *Pennsylvania,* 136 U. S. 114, *International Text Book Co.* v. *Pigg,* 217 U. S. 91, *Crenshaw* v. *Arkansas,* 227 U. S. 389, and *Rogers* v. *Arkansas,* 227 U. S. 401, appear to us to be inapplicable to the case at bar in that they related to statutes which imposed that which in essence was a license fee as a condition prerequisite to doing interstate commerce.

The tax considered as a whole with both its main factors is general in nature and reasonable in amount. The tax upon the petitioner in substance and effect, so far as concerns the factor of its corporate excess employed within the Commonwealth, is levied upon its tangible personal property within the Commonwealth,

upon the credits due it from debtors within this Commonwealth, and upon the exercise of its franchise within this Commonwealth, and, so far as concerns the factor of its income, upon the net income derived from business in this Commonwealth after all losses and expenses have been paid. It is not directed against interstate commerce or property outside the State but is confined to business done, property located, capital employed and net income earned within the Commonwealth. It affects interstate commerce indirectly and is not an immediate burden upon it. It affords to the State only a fair and reasonable revenue for the maintenance of the government, the benefits from the protection of which the petitioner enjoys. Our conclusion is that the law thus construed, as applying to a foreign corporation using a part of its property exclusively for interstate commerce within the Commonwealth, violates no guaranty established by the Constitution of the United States. The tax statute, therefore, is interpreted as applying to a corporation engaged in business within the Commonwealth as is the petitioner.

It is doubtful whether the remaining point argued by the petitioner is open under the last paragraph of the agreed facts, viz., "The amount of the tax assessed is not questioned, but may be referred to as bearing on the questions of law presented. No question of valuation is involved." This appears to preclude inquiry now into the details of the computation or the methods of calculation, and to leave open only questions whether the statute on its face, according to its correct interpretation, is unconstitutional in its application to the facts under which the petitioner does business.

But if the matter be treated on its merits, the contention of the petitioner that its property outside the Commonwealth has been included in the tax and hence that it has been deprived of its property without due process of law, contrary to the Fourteenth Amendment to the United States Constitution, seems to us without substantial merit. This contention is founded on the method of allocation adopted by the commissioner. In the case of a foreign corporation not transacting its entire business within the Commonwealth, the tax is based, so far as concerns the proportion of net income allocated to this Commonwealth on (1) percentage of tangible assets in Massachusetts to all tangible assets, (2) per-

centage of wages assignable to Massachusetts to total wages, and (3) percentage of gross receipts assignable to Massachusetts to gross receipts from all its business. There is in this problem no reference to stocks, bonds or intangible securities, except bonds, notes and certificates of indebtedness of the United States. Such assets do not enter into the calculation or allocation. It seems to us that the question in this connection is not whether a subsidiary percentage standing alone may impinge upon property outside the Commonwealth, but whether the use of all the percentages makes the final result a tax which violates constitutional guarantees. The several percentages are not taxes levied upon the terms employed. They are used in combination to ascertain a sum which in amount as applied to all corporations may be reasonable. The tax so far as concerns this factor is measured upon net income alone and is only payable out of net income. Excises may be measured to some extent by property not subject to direct taxation. *Commonwealth* v. *Hamilton Manuf. Co.* 12 Allen, 298, 306, 307. *Hamilton Manuf. Co.* v. *Massachusetts,* 6 Wall. 632, 639; 640. *Flint* v. *Stone Tracy Co.* 220 U. S. 107, 165. The aim of the statute in this particular is to reach only profits earned within the State. The total net income for the year was $1,148,041.70, of which $15,370.06 was allocated to Massachusetts. The gross receipts assignable to Massachusetts, according to the petitioner's return, were $424,982.70, out of a total of $12,774,825.05. The facts do not appear to us to show that the proportion of net income ultimately allocated to this Commonwealth was in excess of the just amount. We think that the case in this respect is within the authority of *Underwood Typewriter Co.* v. *Chamberlain,* 254 U. S. 113. Our statute in its phrase is different from that under consideration in *People* v. *Knapp,* 230 N. Y. 48; 231 N. Y. 516.

The same reasoning applies to the suggestion that the tax is invalid because wages paid in connection with the Massachusetts office included in part services rendered by travelling salesmen going to other States as well as Massachusetts.

*Petition dismissed with costs.*