## THE MAYTAG COMPANY v. COMMISSIONER OF TAXATION.[1]

November 17, 1944.

No. 33,873.

[1]Reported in 17 N. W. (2d) 37.

*O'Brien, Horn, Stringer & Seymour* and *Gamble, Read, Howland & Rosenfield,* for appellant.

*J. A. A. Burnquist,* Attorney General, and *David W. Lewis,* Special Assistant Attorney General, for respondent.

YOUNGDAHL, JUSTICE.

Plaintiff's action is to recover an overpayment of income taxes for the year 1939. It paid a tax of $4,697.37 disclosed by its return to be due for that year. Defendant assessed a deficiency tax liability in the sum of $3,763.49, which, together with interest and penalty, totalled $4,553.09. Plaintiff paid this amount under protest and filed an application with defendant for a refund, which was refused. The court below denied plaintiff recovery. Its motion for a new trial was denied and judgment entered for defendant. From this judgment, plaintiff appeals.

The question presented is the amount of sales of plaintiff properly allocable to Minnesota for tax purposes under the law applicable to the 1939 tax. Plaintiff contends that the amount of such sales is the sum of $762,070.24 and that sales aggregating $1,485,382.48 were unlawfully included by defendant as Minnesota sales. Defendant asserts that the entire aggregate of sales amounting to $2,247,452.72 were Minnesota sales within the meaning of the statute.

Plaintiff is a Delaware corporation having its principal place of business at Newton, Iowa, where it manufactures washing machines, washing machine accessories, and repair parts. It is licensed to do business in Minnesota. Because its business consists of the manufacture wholly without the state of Minnesota of personal property and the sale of said property within and without the state, its taxable net income for 1939 is controlled by Mason St. 1940 Supp. § 2394-25(A)(2). Under that statute, the tax is computed from the single factor of—

"the basis which the sales made within this State and through, from or by offices, agencies, branches or stores within this state, bear to the total sales—wherever made."

Defendant determined the tax upon the application of that formula, but subsequently, under authority of § 2394-26, plaintiff petitioned for the application of the three-factor formula; that is, the average of three percentages of sales, property, and payroll. The petition was granted, and the tax was then computed in conformity with this formula. There is no claim that an improper formula was applied. Neither does plaintiff challenge the constitutionality of the taxing statutes involved herein, although it states in its brief:

"The constitutionality of the taxing statutes which are involved in this case are not challenged on this appeal; but the basis of upholding as constitutional statutes of a similar import should be kept in mind, as illuminating the rationale of the Minnesota statutes."

We do not here consider the constitutionality of the provisions in question, either as to the language used or the application thereof. Plaintiff did not argue the issue in its brief or at the oral argument, and it should not now be considered by us. Mechanics' Sav. Bank v. Thompson, 58 Minn. 346, 59 N. W. 1054. We therefore confine our discussion to the meaning of the language we have quoted from § 2394-25(A)(2) and to the application of that provision to the factual situation disclosed by the record.

■ Plaintiff asserts that the legislature intended by the language in question to include only sales actually made within the state, and, inasmuch as it is undisputed that the sales comprising the figure of $1,485,382.48 were not made in this state, they are not taxable. Defendant contends that it was contemplated by such language to make taxable any sales made from and by offices, agencies, branches, or stores within this state, although such sales were actually consummated outside the state. The correct interpretation of this language depends upon whether the word *and* in the phrase "sales made within this state *and* through, from or by offices, agencies, branches or stores," etc., is used conjunctively or

disjunctively. Our problem is to seek the intent of the legislature from the language used when considered in connection with its context and the general legislative purpose. The tax imposed upon plaintiff is a franchise tax measured by net income. § 2394-25. The purpose of the legislation is clearly stated in § 2394-2(a) as follows:

"An annual tax is hereby imposed * * * upon every foreign corporation, * * * for the grant to it of the privilege of transacting or for the actual transaction by it of any local business within this state during any part of its taxable year, in corporate or organized form."

It is clear that the legislature intended to tax any business of a foreign corporation which becomes localized. The word *and* may be construed as a disjunctive where the sense of the statute plainly requires it. Eberle v. Miller, 170 Minn. 207, 212 N. W. 190. We believe this is a situation where the conjunctive *and* must, through construction, be replaced by the disjunctive *or* to assure the result intended by the legislature. State ex rel. Hansen v. Walsh, 188 Minn. 412, 247 N. W. 523. By an amendment in 1939,[3] the legislature excluded from the computation *sales negotiated or effected* in behalf of the taxpayer *by agents or agencies* chiefly situated at, connected with, *or sent out from premises* for the transaction of business owned or rented by the taxpayer or by his agents or agencies *outside the state.* By this exclusion, it is reasonable to infer that the legislature intended to include sales which were negotiated or effected in behalf of the taxpayer by agents or agencies chiefly situated at, connected with, or sent out from premises within the state, regardless of where they were actually made. Where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others. Cohen v. Gould, 177 Minn. 398, 225 N. W. 435; State v. Jackson, 218 Minn. 429, 16 N. W. (2d) 752. The maxim operates conversely where the statute designates an exception, proviso, saving clause, or a negative, so

[3]L. 1939, c. 446, § 22, subd. 5.

that the exclusion of one thing includes all others. 2 Horack's Sutherland, Statutory Construction (3 ed.) § 4915, and cases under note 6. Significant, too, is the fact that in said amendment the legislature in speaking of sales used the words *"negotiated or effected"* rather than the word *made*. If plaintiff's position were sustained and sales were made in some other state, they would not be taxable here no matter how much activity was carried on in Minnesota for the purpose of inducing such sales. We do not believe that such a result was intended by the legislature. We therefore conclude that if the disputed sales were made through, from, or by offices, agencies, branches, or stores within the state, they were properly taxable.

■ But plaintiff further asserts that such sales were not made through, from, or by offices, agencies, branches, or stores within this state. It contends that the sales were negotiated outside of Minnesota; that the goods were manufactured and the orders accepted at Newton, Iowa, and the subject of the sales was in each instance delivered from Newton by shipment to the purchaser outside of Minnesota; that no control of these sales was exercised or approval made in Minnesota; that regional managers had their headquarters within their territory outside of Minnesota and payment was always made at Newton at the home office of plaintiff. Plaintiff argues that because all these incidents connected with the sales took place outside the state no adequate taxable event occurred within the state, and hence it cannot properly be contended that the sales were made through, from, or by offices, agencies, branches, and stores within this state. It presents a forceful and rather persuasive argument in support of this position. We look to the record to determine whether it establishes the localization of the disputed sales at the branch office within this state. It is true, the court found the disputed sales "were made through, from or by Regional Managers all of whose territory and whose headquarters were located outside the State of Minnesota to dealers located outside the State of Minnesota"; that such sales "were completed by shipping and transporting the same to the dealers either

by rail or by truck, from Newton, Jasper County, Iowa (where was located the main commercial office of plaintiff and its manfacturing plant), to the respective places of business of the dealers outside the State of Minnesota"; and that the manufacture of the property of the washing machines and parts was made entirely outside of Minnesota. But the court also found that the sales were made through, from, or by offices, agencies, branches, or stores within this state. The question is whether there is sufficient evidence to justify this finding. After a careful consideration of the record, we come to the conclusion that the finding is sustained. The Minneapolis territory in which sales were made is comprised of the states of Minnesota, Iowa, North and South Dakota, Montana, Nebraska, Wisconsin, and the Upper Peninsula of Michigan, with a general branch office located at Minneapolis. At the head of this branch office is a branch manager. The branch manager has charge of the supply depot at the branch, supervises all the regional managers within the Minneapolis territory, interprets the policies of the company, keeps the regional managers active, and assists the dealers with the sales activities. The territory, called the "marketing area," is divided into blocks, with a regional manager in charge of each block. Such regional manager is, in fact, merely the authorized salesman of plaintiff in the block allotted to him. There are no offices in the Minneapolis territory other than the general branch office located at Minneapolis and the main office at Newton. No office is maintained for the regional managers within their territory except the branch office at Minneapolis. From that office emanates sales propaganda and publicity having for its purpose the stimulation and increase of sales. Whatever correspondence is had with the salesmen comes to their homes located within their territory outside the state of Minnesota. Although the court found the headquarters of the regional managers were outside the state, the record shows that their homes are considered as their headquarters. The evidence does not indicate any activity conducted there other than the receipt of mail. The recommendations of the branch manager at Minneapolis are generally followed by

the home office, both as to the employment and discharge of regional managers, and also as to the designation of branch stores within the Minneapolis territory. Sales meetings are conducted twice a year at the branch office, presided over by the branch manager. After the execution in quadruplicate of the contracts of sale, one copy is retained by the dealer, one by the regional manager, and two copies are forwarded to the branch office at Minneapolis, where one is retained and the other sent to the home office at Newton. The branch manager spends 50 percent of his time out in the field encouraging salesmen and attempting to stimulate sales by calling on as many dealers as possible. The organization and supervision of sales activities throughout the Minneapolis territory rests with the branch manager. The extent of the centralization of sales activity at Minneapolis and of the supervision and authority of the branch manager is indicated by the fact that the branch office does not forward to the main office an order by a dealer who, in some manner, has departed from the standards of the company. The salary arrangement made by plaintiff with its branch manager, under which he receives a base salary plus a percentage of the net operating profit in the Minneapolis territory, indicates the emphasis placed by plaintiff upon the sales promotion activity from the Minneapolis branch. The branch manager, presiding over the only sales office within the Minneapolis territory outside of the home office, is in effect the sales manager, whose chief responsibility is the production and stimulation of sales. The record, we believe, supports the conclusion that the making of these sales was induced by activities centered at the branch office at Minneapolis.

We think that the sales activity shown to have taken place at the Minneapolis office was an adequate taxable event contemplated by the provisions of the statute in question. The legislature recognized in § 2394-25 that sales made from premises situated outside the state should be excluded, for in that case there would be no adequate taxable event to form the basis of taxation. The activities in the branch office in Minneapolis were material, economic factors in the making of the sales in question. The activity con-

centrated and localized there resulted in sales from which plaintiff derived profit. We believe the trial court was justified in concluding that the profit reaped by plaintiff from these sales bore a substantial relation to all the activities of the branch office at Minneapolis. We also think there is justification for the finding that, although the regional managers actually resided without the state, they were operating out of the branch office as far as the production of sales was concerned. The language used by the legislature in § 2394-25 convinces us that it intended that sales produced from a branch office as indicated by the record here should be taxable. To exclude from the measure of the tax sales produced by activities centered in Minneapolis under the circumstances here would frustrate the fundamental intent of the legislature. It is apparent that the legislature intended that such activities customarily centered at a sales office and designed to induce customers to purchase the products should be selected as the criterion and basis for taxation. Although recognizing that other factors as to sales are involved as incidents to the sales, the legislature assigned as the dominant one the *place* where the activities creating the sales are centralized. For income tax purposes, such sales have a situs at the branch office in Minneapolis, because the business activity inducing such sales is there localized. We have held that for the purposes of taxation intangibles have a situs at the taxpayer's commercial domicile. Cargill, Inc. v. Spaeth, 215 Minn. 540, 10 N. W. (2d) 728. In New York ex rel. Whitney v. Graves, 299 U. S. 366, 372, 57 S. Ct. 237, 238, 81 L. ed. 285, 288, the court said:

"* * * When we speak of a 'business situs' of intangible property in the taxing State we are indulging in a metaphor. We express the idea of localization by virtue of the attributes of the intangible right in relation to the conduct of affairs at a particular place."

It seems to us that this idea of localization which the courts apply to intangibles is what the legislature had in mind in designating the formula that should be applied to sales. Although not squarely

in point, the following cases have been helpful in arriving at the conclusion here reached. Commonwealth v. Bayuk Cigars, Inc. 345 Pa. 348, 28 A. (2d) 134; Alpha Portland Cement Co. v. Commonwealth, 244 Mass. 530, 139 N. E. 158, 142 N. E. 762; Buick Motor Co. v. City of Milwaukee (7 Cir.) 48 F. (2d) 801. Plaintiff cites no authority in support of its position other than the Minnesota board of tax appeals case of Ruvelson v. Commissioner of Taxation, Docket No. 89, filed October 7, 1943. It should be pointed out first that this case was decided by the board before the 1939 amendment (L. 1939, c. 446, § 22) came into being. As heretofore stated, by such action the legislature clearly expressed itself as to what sales were excluded, indicating an intent to include sales effected from offices within the state. Aside from that fact, however, we believe the facts in the Ruvelson case are distinguishable. The salesman there was a jewelry salesman who carried his merchandise with him and completed the details of the sale when the merchandise was delivered. He selected the customer, negotiated the sale, and completed delivery of the goods. He set the price at a figure not less than cost. He made complete settlement for the purchase price. It was possible that his entire stock could be sold without any contact at all with the Minnesota office. The board pointed out that it was a "unique" and "certainly rare" situation and compared the status of the salesman to that of "independent contractors." We believe the case to be distinguishable on the facts.

Affirmed.