DAVID H. TURNER v. P. SNYDER and Others.[1]

July 5, 1907.

Nos. 15,312—(213).

**Home Rule Charter.**

Unless otherwise expressly provided, the provisions of a "home rule charter," if subject to municipal regulation, supersede the general laws with reference to the same subject-matter.

**Same—Local Assessments.**

The new charter of respondent city, adopted July 31, 1906, superseded Laws 1895, p. 601, c. 235, and Laws 1899, p. 130, c. 128, upon the subject of local assessments for street improvements.

Action in the district court for Polk county by a taxpayer of the city of Crookston to restrain the defendants, as members of the city council of Crookston, from authorizing the letting of a contract to pave a certain street and the letting of a contract for street sprinkling. From an order sustaining defendants' demurrer to the complaint, Watts, J., plaintiff appealed. Reversed.

*Charles Loring,* for appellant.
*Martin O'Brien,* for respondents.

LEWIS, J.

Prior to July 31, 1906, the city of Crookston was governed by the provisions of chapter 1, p. 1, Sp. Laws 1885, entitled: "An act to amend and consolidate the charter of the city of Crookston. * * *" Under that charter proceedings in condemnation of private property for public business, and all local improvements, including the opening, grading, and paving of streets and alleys, originated with the common council, and there was no provision for the initiation of such improvements upon the petition of property owners. Chapter 235, p. 601, Laws 1895, provided that in cities having a population of less than twenty five thousand inhabitants the common council might, by a majority vote, divide the assessment made for street improvements into not exceeding ten annual payments, and that the city might issue certificates of indebtedness, or bonds, redeemable from time to time as

[1]Reported in 112 N. W. 868.

101 M.—31

the payments became due. That act was amended by chapter 128, p. 130, Laws 1899, to provide that the city council might, if it deemed the improvement necessary, upon being petitioned by three-fourths of the property owners, divide the assessment into instalments, according to chapter 235, Laws 1895. July 31, 1906, the city adopted a new "home rule charter," so called, which went into effect August 31, 1906.

This action was brought by appellant, as a taxpayer of Crookston, to restrain the city council from entering into a contract for the paving of certain streets and the sprinkling of certain other streets in the city upon the ground that the proceedings were unauthorized by law; that the city council assumes to be acting by virtue of the authority conferred upon it by a petition signed by three-fourths of the owners of the real estate to be assessed for the improvement under the provisions of chapter 235, Laws 1895, and of chapter 128, Laws 1899. The court below sustained the demurrer to the complaint, which brings up the question whether the general laws referred to remained in force after the adoption of the charter; there being no express repeal of those acts.

The new charter is a comprehensive revision, and embraces the entire subject of municipal government. Chapter 8 is devoted to the question of special assessments for local improvements, and section 92 provides that, whenever the city council shall receive a petition signed by owners of more than one-half of the frontage of property abutting on such improvement, the council shall proceed in the manner therein indicated. Chapter 9, under the head of "Streets, Sidewalks, and Bridges," states that the city council has authority, without petition as in the former charter, to establish the grade of any street, vacate highways, streets, lanes, and alleys, and order the construction of sidewalks; and, as provided by chapter 10, the same powers exist with reference to the construction of sewers.

In the case of Grant v. Berrisford, 94 Minn. 45, 101 N. W. 940, 1133, it was held that the constitutional amendment which authorizes cities to frame their own charters does not forbid the adoption of charter provisions as to any subject appropriate to the orderly conduct of municipal affairs, although they may differ in detail with those of existing general laws, and it was held that the subject of contractors'

bonds to secure the performance of contracts with a city, and the payment of laborers and materialmen, including the contents of the bonds, and conditions and limitations as to their enforcement, was germane to the subject of municipal legislation, and superseded the provisions of the general laws on the subject. In that case the general laws referred to provided that within ninety days after furnishing the last item notice must be served upon the principal and sureties of the bond, specifying the nature and amount of the claim and the date of furnishing the last item of material; whereas, the charter of the city of St. Paul made no provision for the service of such notice. Again, in the case of Peterson v. City of Red Wing, supra, p. 62 (111 N. W. 840), an action was brought against the city for the recovery of damages for personal injuries. The general laws provided that within thirty days after the alleged injury notice thereof should be given to the city or village council, or trustees, or other governing body of such city; whereas, the charter of the city of Red Wing provided that such notice should be given in writing within thirty days to the mayor or city clerk. It was held that the subject of notice to a municipality of claims for damages by reason of defects in its streets as a condition precedent to maintaining an action therefor was relevant to the subject of municipal legislation, and that the provisions of the charter with respect to that subject superseded the general law. Those cases control the one now before us.

In the new charter the entire subject of assessment for local improvements is comprehensively covered, and, when the different provisions of the charter bearing upon the subject are read and considered, it is plain that it was not the intention to provide two methods of assessment—one under the general law upon the instalment plan, requiring three-fourths of the property owners affected to sign a petition in order to initiate it; and another upon practically a cash basis, requiring only a majority of the property owners to do so. This intention is more manifest by a consideration of section 63, c. 6, under the head of "Finance," where a permanent improvement fund is created, and it is provided that whenever fifty per cent. or more, of any special assessment ordered by the common council for local improvements shall have been collected and in the hands of the city treasurer, the council may, in its discretion, advance from that fund an amount

which, with the taxes so collected, shall be sufficient to complete such local improvement; but neither the city council, nor any officer thereof, shall ever authorize, enter into, or execute any contract for any local improvement in behalf of the city until there shall have been collected at least fifty per cent. of the special assessment levied for the performance of the work. This section indicates that the framers of the charter had in mind that it might be advisable to draw upon the permanent improvement fund, temporarily, in order to hasten the completion of such local improvement.

Counsel for the city has strongly urged that it will be difficult to secure much-needed improvements if the city is deprived of operating under the instalment plan, and calls attention to the comparative ease with which the payments can be made under that method. We are not called upon to express any opinion as to the expediency of the so-called "Ontario plan" of assessment. It is possible that property owners may be more easily induced to undertake work of that character when they know that they will not be called upon in the immediate future to make payment therefor; but there is much to be said on the other side, and evidently the framers of the charter, and the people in adopting it, gave consideration to that question, and thought it wise to prevent the people from mortgaging their property for the purpose of enjoying a present benefit.

The rule of construction applicable in a case of this character is different from the rule applied where the question is whether a subsequent general law supersedes a special law on the same subject. That rule is applied in State v. Egan, 64 Minn. 331, 67 N. W. 77, and State v. Peter, supra, p. 462, (112 N. W. 866). In cases like the one under consideration, where the charter covers the entire subject-matter, the intention to supersede all general laws on the subject will be presumed, unless otherwise expressed.

Order reversed.