IN RE CONDEMNATION BY THE CITY OF DULUTH, ETC.
NORTHERN PACIFIC RAILWAY COMPANY v. CITY OF
DULUTH.[1]

September 15, 1922.

No. 22,688.

**Land used for one public purpose (railway) may be condemned for highway.**

    1. A city may be authorized by appropriate legislation to take for its municipal public purposes land already devoted to another public

[1]Reported in 189 N. W. 937.

purpose. Before such power shall be decreed to exist, the legislative intent must be made to appear by express words or by necessary implication.

### Charter of Duluth.
2. The Duluth home rule charter purports to confer such power upon the city of Duluth.

### Provision in home rule charter for such condemnation valid.
3. The charter provision is valid. A home rule charter has all the force of a charter granted directly by the legislature. Its provisions as to matters pertaining to municipal government, if not contrary to the public policy of the state, override general laws with respect to the same subject. The power of condemnation of land for municipal purposes is a matter pertaining to municipal government.

### Objectionable grade crossing does not prevent condemnation.
4. The fact that a condemnation of a highway over land devoted to railroad uses will result in an undesirable grade crossing is not an objection to the condemnation. The separation of grades can best be effected by a proceeding for that purpose after the street has been established.

### Award of damages sustained.
5. There is evidence sufficient to sustain the jury's award of damages as against the charge that it is inadequate.

Condemnation proceedings to take land of the Northern Pacific Railway Company for a public roadway. The district court for St. Louis county, Freeman, J., granted the petition and appointed commissioners. From the award of damages at $7,840, the railway company appealed. The appeal was heard by Fesler, J., and a jury which awarded $56,136. The motion of the city of Duluth to vacate the verdict and for a new trial was granted. The second trial was before Freeman, J., and a jury which returned a verdict for $18,-853.50. The motion of the city of Duluth to reduce the verdict was denied. The motion of the railway company for judgment in its favor dismissing the proceeding notwithstanding the verdict or for an order setting aside the verdict and reinstating the former verdict

for $56,136 was denied. From the judgment entered pursuant to the second verdict, the railway company appealed. Affirmed.

*D. F. Lyons* and *Washburn, Bailey & Mitchell*, for appellant.

*John B. Richards*, for respondent.

HALLAM, J.

1. In 1917 the city of Duluth commenced proceedings to take land for the purpose of establishing and opening a public street connecting two streets of the city. Part of the land proposed to be taken was already devoted to public use for railway purposes by the Northern Pacific Railway Company. The city council by resolution determined that it was necessary to take the land for the purpose of the public roadway, and the court found that the taking was necessary and authorized by law and appointed commissioners to ascertain and report the damages. The commissioners awarded the railway company as damages the sum of $7,840. The railway company appealed to the district court. A jury in that court awarded $56,136. The court, on motion of the city, set aside the verdict and granted a new trial. On the second trial the jury awarded $18,-853.50. From the judgment then entered the railway company appeals.

The appeal from the judgment brings up for review the record from the commencement of the proceeding. Warren v. First Div. St. Paul & Pac. R. Co. 18 Minn. 345, 354 (384).

It is conceded that the proposed taking by the city essentially impairs the railway company's use of the land. The major question in the case is whether the city has the power to condemn a highway over land already devoted to railroad use where such condemnation will involve the essential impairment of the railroad use. It is conceded that a city may be authorized by appropriate legislation to take for its municipal public purposes land already devoted to another public use. It is also conceded that, before such power will be deemed to exist, the legislative intent must be made to appear by express words or by necessary implication and that such implication never arises "except as a necessary condition to the beneficial enjoyment and efficient exercise of the power expressly granted, and

then only to the extent of the necessity." Milwaukee & St. P. Ry. Co. v. City of Faribault, 23 Minn. 167; St. Paul Union Depot Co. v. City of St. Paul, 30 Minn. 359, 15 N. W. 684; Minneapolis & St. L. R. Co. v. Village of Hartland, 85 Minn. 76, 88 N. W. 423.

2. The general statutes of the state do not confer such power upon cities in express terms and perhaps not by necessary implication. Duluth is, however, governed by a home rule charter adopted pursuant to section 36, article 4, of the state Constitution. The enabling act, G. S. 1913, § 1345, passed pursuant to the constitutional provision, provides that a city adopting a home rule charter pursuant to its authority, may, by such charter, "be authorized to acquire by * * * condemnation any property within or without its boundaries needed for the full discharge of any public function, which it is permitted to exercise."

Section 72 of the city charter provides:

"The City of Duluth is hereby empowered to acquire, by purchase, gift, devise or condemnation, any property, corporeal or incorporeal, either within or without its corporate boundaries, which may be needed by said City for any public use or purpose, and the fact that the property so needed has been acquired by the owner under the power of eminent domain, or is already devoted to public use shall not prevent its acquisition by said city."

This section of the charter to our minds confers in "express words" the power to make this condemnation.

3. It is contended that this provision of the charter is unconstitutional. Section 36, article 4, of the Constitution provides that "any city * * * may frame a charter for its own government as a city consistent with and subject to the laws of this state." A charter so adopted has all the force of a charter granted directly by legislative act and in all matters pertaining to municipal government the provision of the home rule charter overrides general laws with respect to the same subject. Grant v. Berrisford, 94 Minn. 45, 101 N. W. 940, 1113; Hjelm v. City of St. Cloud, 129 Minn. 240, 152 N. W. 408; Markley v. City of St. Paul, 142 Minn. 356, 172 N. W. 215.

In the Berrisford case it was said:

"This limitation forbids the adoption of any charter provisions contrary to the public policy of the state, as declared by general laws, or to its penal code—for example, provisions providing for the licensing of prize fighting or gambling or prostitution, or those which are subversive of the declared policy of the state as to the sale of intoxicating liquor. But it does not forbid the adoption of charter provisions as to any subject appropriate to the orderly conduct of municipal affairs, although they may differ in details from those of existing general laws. This is necessarily so, for otherwise effect could not be given to the constitutional amendment which fairly implies that the charter adopted by the citizens of a city may embrace all appropriate subjects of municipal legislation, and constitute an effective municipal code, of equal force as a charter granted by a direct act of the legislature."

The power of condemnation of land for municipal purposes is a matter pertaining to municipal government. While the state legislature has never in express terms given the power so clearly given by the Duluth charter, still it cannot be said that the provisions of the charter are in any sense "contrary to the public policy of the state" as declared by its Constitution or laws.

Whether this clause of the charter gives the power to condemn without limit property devoted to state or other municipal uses is a question not here involved. Absurd consequences may give rise to implied exceptions. State v. Barge, 82 Minn. 256, 84 N. W. 911, 1116, 53 L. R. A. 428; Baart v. Martin, 99 Minn. 197, 211, 108 N. W. 945, 116 Am. St. 394.

4. It is urged that this condemnation will result in a grade crossing and that a grade crossing at this point will result in congestion of traffic and danger. If this street is opened it seems inevitable that there must be a separation of grades. On this point both parties are agreed. If such separation could be determined upon now it seems likely that the objection to condemnation would be overcome, for the railway company in the past has offered at its own expense to erect an overhead crossing connecting these two

streets. But the fact that a grade crossing may be undesirable does not seem to us an objection to the condemnation.

It seems to us impracticable to solve this problem in this proceeding. The separation of grades can best be effected by a proceeding for that purpose after the street has been established.

5. The railway company contends that, if the condemnation is to stand, the first verdict of $56,136 should be substituted for the second verdict of $18,853.50. The contrast between the two verdicts is great. The judge who presided at the first trial was of the opinion that the damages were excessive in view of the uncertainty as to use in the near future of part of the railway company's land that is taken. Whether it was or not was a matter resting largely in the judgment and discretion of the trial court. The damages are difficult to estimate and the testimony took a wide range, the estimates running from $7,840 to $300,000. The order made was within the range of the court's discretion. There is evidence to sustain the last verdict of $18,853.50. Some of the city's witnesses placed the damage at a much less figure. In our opinion there is evidence sufficient to sustain the verdict as against the charge that it is inadequate.

Judgment affirmed.