Peter **GADEY**, Carole A. Perko, Paul Perko and Jon Perko, individually and as representatives of all others similarly situated, Respondents,

v.

CITY OF MINNEAPOLIS, Appellant.

No. C0-93-2380.

Court of Appeals of Minnesota.

June 7, 1994.

Review Denied Aug. 24, 1994.

Scott J. Otero–Strouts, Jan Stuurmans, Stuurmans & Karan, P.A., Minneapolis, for respondents.

Robert J. Alfton, City Atty., William C. Dunning, Kenneth R. Frantz, Asst. City Attys., Minneapolis, for appellant.

Considered and decided by DAVIES, P.J., and HARTEN and STONE,* JJ.

## OPINION

DAVIES, Judge.

This court granted discretionary review, thus allowing appellant city to challenge a partial summary judgment ruling that special assessments were improperly levied between 1983 and 1992, and to challenge the remedies provided to respondents for those defective assessments. We affirm in part, reverse in part, and remand.

## FACTS

### The Assessments

Respondents Peter Gadey, Carole Perko, Paul Perko, and Jon Perko are representatives of a class composed of owners of real property in Minneapolis on which special assessments were levied between 1983 and 1992 because of their failure to abate nuisances or because of other, similar ordinance violations.

Between 1983 and 1989 the city council resolutions authorizing levy of the challenged special assessments expressly stated that they were levied and collected "as provided in Minnesota Statutes, Section 429.101." In 1990, 1991, and 1992, the city council elected to proceed with some of the special assessments under city charter and with others under a local ordinance and a different state statute.

---

* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

The record does not indicate what notice procedures the city followed for assessments between 1983 and 1985. For special assessments between 1985 and 1992, however, the city generally sent two form letters. The first letter informed the owner of an ordinance violation on the property and directed the owner to correct the problem by a certain date. Additionally, the letter stated:

> If not complied with by the due date, violation tags may be issued to the owner or occupant and may also result in the City arranging to have the nuisance condition corrected and/or removed. All costs of such removal or correction will be added as a special tax assessment against the property. Minneapolis Ordinance Sections 227.90 and 227.100. Please be advised that the cost of such removal or correction by a City agency will very likely be higher than that of a private party employed by yourself.

The second letter notified the property owner that the city had, in fact, taken action to correct the nuisance and that

> [t]he cost of correction is a special assessment against your real property, and will be payable with your real estate taxes. However, if you choose to prepay the assessment, you may send a check payable to Minneapolis Finance Department at the address listed above.
>
> *        *        *        *        *        *
>
> If you wish to protest this assessment, you may file an appeal with the City Clerk's office. Please call (612) 673–5858 between 9:00 a.m. and 4:30 p.m. Monday through Friday for information about the appeals process or if you have any questions about this pending assessment.

The second letter also disclosed the amount of the assessment. Apart from these letters, the city did not provide any notice of hearing or appeal rights concerning the special assessments.

The assessment appeared in due course on the property tax statement for each parcel.

### The 1987 Gadey Lawsuit

In May and August of 1987, the city removed noxious weeds from property owned by respondents Peter Gadey and Carole Per-

ko and levied assessments for the abatement. Gadey and Perko appealed the assessments to Hennepin County District Court, claiming the city had not complied with the provisions of chapter 429. The district court concluded that the city, by referencing Minn.Stat. § 429.101 in its resolution, chose to proceed under that statute and, therefore, was bound by its provisions. Because the city did not give the owners the statutorily required notice of their right to appeal, the court determined the city had no jurisdiction to levy the assessment and thus ordered the city to refund the assessment. The city did not appeal that decision, but it did, thereafter, assert a different basis for authority to make special assessments for nuisance abatement, switching from Minn.Stat. § 429.101 to its home rule charter.

### The 1992 Lawsuit

In 1992, respondents (Gadey, and Carole, Paul, and Jon Perko) brought this action requesting its certification as a class action and seeking a declaratory judgment that special assessments between 1983 and 1992— numbering in the tens of thousands of assessments—were invalid. As a remedy, they demanded reimbursement of assessments paid—amounting for the class to more than $11 million, plus interest and legal fees.

In November 1993, the district court certified the lawsuit as a class action and granted partial summary judgment to respondents. The court determined that the city was required to follow the procedures under chapter 429 for all special assessments between 1983 and 1992 regardless of home rule charter provisions, and that the city's failure to provide the specific chapter 429 notice of appeal rights rendered the assessments invalid. The court also rejected the city's claims of waiver and laches, determined that respondents' remedies were not limited by chapter 429, and determined that the class was entitled to reimbursement of paid assessments. This court granted discretionary review.

### ISSUES

I. Does laches preclude recovery for the deficient assessments between 1983 and 1989?

II. Does chapter 429 apply to the 1990, 1991, and 1992 special assessments and, if so, what remedies are available to respondents?

## ANALYSIS

### Standard of Review

■ In reviewing the district court's grant of summary judgment, this court determines whether there are genuine issues of material fact and whether the district court correctly applied the law. *Offerdahl v. University of Minn. Hosps. & Clinics*, 426 N.W.2d 425, 427 (Minn.1988). Here, the parties agree that no material facts are in dispute and that the only issues concern the interpretation of Minnesota statutes and the Minneapolis charter and ordinances. The interpretation of a statute, charter, or ordinance involves a question of law, which this court reviews de novo. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn.1985).

### I.

### General Background

Chapter 429 authorizes municipal councils in second, third, and fourth class cities, in statutory cities, and in towns to abate nuisances and to assess the costs of such abatement upon the affected property. Minn.Stat. §§ 429.011, subd. 2, 429.101 (1992).[1] Minneapolis is, however, a city of the first class. Minn.Stat. § 410.01 (1992) (defining cities of "first class" as having more than 100,000 inhabitants). Thus, chapter 429 does not, under its own provisions, apply to the city. In 1969, however, the legislature permitted Minneapolis to exercise the powers and procedures provided in chapter 429. 1969 Minn. Laws ch. 499.

Chapter 499 provides:

Section 1. Notwithstanding the provisions of the charter of the city of Minneapolis or of any statutory enactment, the provisions of Minnesota Statutes 1967, Chapter 429, are hereby made applicable to the city of Minneapolis; and said city, at its option, may make any local improve-

ment and levy any special assessment either under its home rule charter, or under said Chapter 429, or under other existing statutory authority, as the council of the city of Minneapolis may in each case determine.

Sec. 2. Notwithstanding any provisions of the charter of the city of Minneapolis, or of any statutory enactments, the said city may provide for the collection of special charges for * * * any and all other services or improvements specified in said Chapter 429, as a special assessment against the property benefitted. *The procedure for the levy of said special assessment shall, if the city elects to proceed under the provisions of said Chapter 429, be as provided in said Chapter 429.*

*Id.* §§ 1, 2 (emphasis added).

Thus, since 1969 the city has had three options when making local improvements and levying special assessments:

1. To proceed under chapter 429;

2. To proceed under other statutory authority; or

3. To proceed under its home rule charter.

The city concedes that, between 1983 and 1989, it opted to levy assessments under chapter 429. The city argues, however, that it elected, between 1990 and 1992, to proceed under its home rule charter and was not subject to the statutory provisions. Because the parties' arguments divide the assessments into these two basic time periods, we address the assessments similarly.

### II.

### 1983 to 1989 Assessments

■ The city concedes that, from 1983 to 1989, it opted to levy assessments for nuisance abatement under Minn.Stat. § 429.101, and that it did not comply with the statute's notice provisions. The district court, concluding that respondents were not precluded from challenging these assessments by lach-

---

**1.** Chapter 429 was amended between 1983 and 1992. These amendments are not, however, germane to the questions before us. To avoid confusion, we cite to the 1992 version of chapter 429.

es, determined respondents were entitled to reimbursement. We disagree.

██ Laches is an equitable doctrine that prevents those parties who have not been "diligent in asserting a known right from recovering at the expense of one who has been prejudiced by the delay." *Aronovitch v. Levy*, 238 Minn. 237, 242, 56 N.W.2d 570, 574 (1953). "Municipalities are prejudiced if there is no point in time at which their assessments become final." *Shortridge v. Daubney*, 425 N.W.2d 840, 842 (Minn.1988) (four-year delay in challenging special assessments precluded recovery based on technical defect in notice).

Here, respondents have waited between three and nine years to challenge the city's notice procedure for the 1983 to 1989 assessments.

> [N]either special assessment proceedings nor the integrity of municipal finances in general can remain intact if special assessments are subject to challenge years after they have been levied.

*Id.* Allowing respondents to recover after such delay would clearly prejudice the city. We conclude respondents are barred from recovering for any defective assessment between 1983 and 1989 because, knowing of the assessments from their tax statements, they did not diligently challenge them, and the delay prejudiced the city.

### III.

### 1990 to 1992 Assessments

██ From 1990 to 1992, the city opted to levy the special assessments at issue under the authority of its home rule charter. As to these assessments, in contrast to the 1983 through 1989 assessments, we do not believe a sufficient amount of time has elapsed to require application of laches. We therefore address the procedural validity of the assessments.

Neither the 1969 session law, the Minneapolis charter, nor chapter 429 expressly state whether chapter 429's procedural requirements apply when the city opts to levy assessments under its home rule charter. The city claims the statute does not apply, while respondents claim that it does.

██ Home rule charter cities have unique powers over local matters. A home rule charter

> has all the force of a charter granted directly by legislative act and in all matters pertaining to municipal government the provision of the home rule charter overrides general laws with respect to the same subject.

*Northern Pac. Ry. v. City of Duluth*, 153 Minn. 122, 125, 189 N.W. 937, 939 (1922). So long as the municipal legislation involves matters of municipal concern and the state has not expressly or impliedly restricted the municipality's power over these matters, the municipality may enact local legislation that is inconsistent with state law. *Park v. City of Duluth*, 134 Minn. 296, 298–99, 159 N.W. 627, 628 (1916). Charter provisions will be given effect even where they "differ in details from those of existing general laws." *Grant v. Berrisford*, 94 Minn. 45, 48, 101 N.W. 940, 942 (1904); *accord Board of Ed. of City of Minneapolis v. Erickson*, 209 Minn. 39, 42, 295 N.W. 302, 304 (1940) (levy limit imposed by charter effective and board had no emergency power to exceed it); Op.Att'y Gen. 707a–4 (August 1, 1955) (council may elect to levy under charter or Minn.Stat. ch. 429, but when one or other is chosen, council must follow its provisions throughout assessment proceeding). A charter may, however, incorporate state law by reference. *Freding v. City of Minneapolis*, 177 Minn. 122, 125, 224 N.W. 845, 847 (1929). Thus, where the city elects to proceed under its charter, state law does not automatically apply unless the charter so states or the state legislature has expressly or impliedly made the charter subject to state law.

Here, the 1969 session law both expressly allows the city to proceed with local assessments under its charter and makes chapter 429 available to the city. But the charter and ordinance provisions do not provide any specific assessment procedure for the abatement of nuisances. In the absence of specific charter or ordinance provisions, we believe that the session law's broad statement concerning the applicability of chapter 429 controls as an express limitation on the city's

power. *See Park,* 134 Minn. at 299, 159 N.W. at 628 (city charters must be in harmony with state laws).

The city's assessment procedures in 1990, 1991, and 1992 admittedly did not comply with section 429.101 or the minimum requirements of section 429.021. *See* Minn.Stat. §§ 429.021, subd. 3 (if city levies assessments under charter provisions, charter is deemed to require notice to property owner of appeal rights and deferment procedures), 429.101, subd. 2 (special assessment procedures for abatement of local ordinance violations). Accordingly, we conclude the district court correctly determined that these special assessments failed to comply with the statute.

■ In addition, during this period, the city levied certain special assessments under chapter 463. Assessments under chapter 463 are expressly governed by Minn.Stat. §§ 429.061–.081. Minn.Stat. § 463.21 (1992). Other assessments were under local ordinance chapter 249. During this period, chapter 249 of the local ordinance code expressly stated that if not paid within 30 days of notification, the costs of razing dangerous buildings were to be assessed as provided by Minn.Stat. § 429.101. Minneapolis, Minn., Code of Ordinances § 249.60 (1990–92). But the city did not follow the statutory procedures, whatever authority it used. Thus, these special assessments between 1990 and 1992 were defective for failure to comply with chapter 429.

## IV.

### Remedies

■ Having determined that the special assessments between 1990 and 1992 were defective, we next consider what remedies are available to respondents. The district court held that respondents were entitled to restitution of all assessments levied with defective notice. The city argues that there is no such remedy for defective assessments. We agree.

The assessments levied between 1990 and 1992 are governed by chapter 429 because section 429.101, subdivision 2, expressly makes section 429.081 applicable to assessments made pursuant to section 429.101.

Minn.Stat. § 429.101, subd. 2. And section 429.081 states:

> The court shall either affirm the assessment or set it aside and order a reassessment as provided in section 429.071, subdivision 2. * * * This section provides the *exclusive* method of appeal from a special assessment levied pursuant to this chapter.

Minn.Stat. § 429.081 (1992) (emphasis added).

■ Respondents claim this action is not an appeal from a special assessment, but is, rather, a collateral attack outside the provisions of chapter 429. Respondents argue that, although chapter 429 governs the city's actions, it does not govern the remedy for the city's violation. We cannot accept such a contradictory position. Having successfully invoked the statute to govern the city's special assessment procedure, respondents may not ignore that same statute's exclusive remedy. *See Krahl v. Nine Mile Creek Watershed Dist.,* 283 N.W.2d 538, 544–45 (Minn. 1979) (rejecting use of declaratory action to challenge special assessments where statute provided exclusive appeal provisions).

The statutory provisions are clear. The exclusive remedy for a special assessment levied under defective procedure is an order setting aside the assessment and ordering reassessment. Minn.Stat. § 429.081. Moreover, the supreme court has rejected the notion that chapter 555 provides authority to fashion remedies different from those provided by statute. *Krahl,* 283 N.W.2d at 544 (citing *Land O'Lakes Dairy Co. v. Village of Sebeka,* 225 Minn. 540, 548, 31 N.W.2d 660, 665 (1948) (holding that chapter 555 did not provide alternate remedy to chapter 278's provisions for appeal of real estate taxes), *cert. denied,* 334 U.S. 844, 68 S.Ct. 1513, 92 L.Ed. 1768 (1948)). We conclude that respondents' remedies do not include the right to reimbursement. Accordingly, we reverse the district court and remand for proceedings consistent with our decision.

The district court is free, on remand, in light of our decision on the available remedies, to reconsider the decision to certify this matter as a class action. *See Alevizos v. Metropolitan Airports Comm'n,* 298 Minn.

471, 498, 216 N.W.2d 651, 668 (1974) (class action improper if plaintiff's claims fail to satisfy commonality requirement of rule 23.-01(b)).

Finally, respondents have moved to supplement their brief with additional authority, consisting of an amended Minneapolis ordinance and committee report. These documents are irrelevant to our decision and we deny the motion.

## DECISION

Respondents' delay in challenging special assessments between 1983 and 1989 prejudices the city and precludes them from recovering for any defect in notice. Chapter 429 applies to special assessments made under the home rule charter in the absence of a specific charter or ordinance provision governing the assessment procedure. Finally, chapter 429 provides the exclusive remedy for defective special assessments; therefore, we remand for a redetermination of the proper remedy.

**Affirmed in part, reversed in part, and remanded.**