James A. LILLY, Respondent,

v.

CITY OF MINNEAPOLIS, Appellant (C6–94–1583), Respondent (C8–94–1584/CX–94–1585),

and

Kellie Jones, et al., intervenors, Respondents (C6–94–1583/CX–94–1585), Appellants (C8–94–1584),

Jane Anglin, et al., intervenors, Respondents (C6–94–1583/C8–94–1584), Appellants (CX–94–1585).

Nos. C6–94–1583, CX–94–1585.

Court of Appeals of Minnesota.

Jan. 31, 1995.

Review Denied March 29, 1995.

Jordan W. Lorence, Paeonian Springs, VA, Paul Shoemaker, Minneapolis, for James A. Lilly.

Surell Brady, City Atty., James A. Moore, Asst. City Atty., Minneapolis, for City of Minneapolis.

Scott A. Benson, Dorsey & Whitney, Minneapolis, for Kellie Jones, et al.

Kristin Nering Lockhart, Brosnahan, Joseph, Lockhart & Suggs, Minneapolis, for Jane Anglin, et al.

Beverly Balos, University of Minnesota, Michael O. Freeman, Hennepin County Atty., Minneapolis, for amicus curiae Hennepin County.

Hubert H. Humphrey, III, Atty. Gen., John Garry, Asst. Atty. Gen., St. Paul, for amicus curiae Minnesota Atty. Gen.

Richard M. Erdall, Minneapolis Professional Employees Ass'n, Minneapolis, for amicus curiae MPEA.

Tom Prichard, Minnesota Family Council, Minneapolis, for amicus curiae Minnesota Family Council.

David M. Wagner, Family Research Council, Washington, DC, for amicus curiae Family Research Council.

Considered and decided by PETERSON, P.J., and SCHUMACHER and FOLEY,* JJ.

## OPINION

DANIEL F. FOLEY, Judge.

This case involves a confrontation between a home rule charter city's exercise of power in light of a state statute. Appellants, the City of Minneapolis and five city employees, challenge a judgment that permanently enjoins the city from providing health insurance benefits for city employees' same sex domestic partners and blood relatives not authorized to receive such benefits under Minn. Stat. § 471.61 (1992).[1] We affirm on grounds that, although it is a home rule charter city, the City of Minneapolis does not have the power to grant employee health care benefits to persons beyond those defined by statute.

## FACTS

Appellant City of Minneapolis (the City) is a home rule charter city. The current city charter was adopted by election on November 2, 1920.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

1. The Minnesota Attorney General, Hennepin County and the Minneapolis Professional Employees Association each filed an amicus curiae brief opposing the district court's decision. The Minnesota Family Research Council, an advocacy organization based in Minneapolis, and the Family Research Council, an advocacy organization in Washington, D.C., jointly filed an amicus curiae brief in support of respondent taxpayer.

In 1988 and 1989, appellants Jane Anglin, Judith Bagan and Marie Hanson (Anglin appellants) sued the City and its Library Board for failing to provide health care coverage for the domestic partners of city employees. On January 25, 1991, the Minneapolis City Council (City Council) passed the Domestic Partnerships Ordinance, chapter 142 of the Minneapolis Code of Ordinances (City Code). The City Code defines domestic partners as two adults who:

(1) Are not related by blood closer than permitted under marriage laws of the state;

(2) Are not married or related by marriage;

(3) Are competent to enter into a contract;

(4) Have no other domestic partner with whom the household is shared, or with whom the adult person has another domestic partner;

(5) Are jointly responsible to each other for the necessities of life;

(6) Are committed to one another to the same extent as married persons are to each other, except for the traditional marital status and solemnities.

Minneapolis, Minn., Code of Ordinances Title 7, ch. 142, § 142.20 (1991).

On November 17, 1992, the Minneapolis Commission on Civil Rights determined that the City's employee benefits program discriminated against lesbian employees of the Library Board based upon their "affectional preference." On April 2, 1993, the City Council passed resolution 93R–106, authorizing limited reimbursement to city employees for health care insurance costs for same sex domestic partners and for qualified blood relatives who are "not considered a dependent under current City health plans." The City acknowledges that resolution 93R–106 applies to grant reimbursement of monthly insurance costs for "adult children, adult grandchildren, parents, grandparents, brother, sister, aunt, uncle, niece or nephew who resides with the employee during period reimbursement is claimed." The resolution limits the reimbursement to

an amount not more than the difference between the employer contribution for family insurance coverage and the employer contribution for single insurance coverage under the applicable collective bargaining agreement.

The resolution expressly excludes reimbursement for the employee's domestic partner or family member who otherwise has access to other group health insurance coverage or to Medicare.

On August 27, 1993, the City Council adopted resolution 93R–342, extending "health care coverage for the partners of employees in same sex domestic partnerships." This resolution directed that the "limited reimbursement mechanism supporting the diverse families of the City's work force who are not eligible for health coverage" be continued. In addition, the resolution directed that the City would "seek an affirmative inclusion of the term 'domestic partners' in state legislation on health care benefits." Pursuant to this resolution, the city then contracted with two health maintenance organizations (HMO's) to include same sex domestic partners effective January 1, 1994. Six city employees registered their domestic partners for health insurance benefits.

On December 20, 1993, respondent James A. Lilly, a resident and taxpayer of the City of Minneapolis, sought a temporary restraining order to enjoin the City from implementing resolution 93R–342. Following a hearing on December 30, 1993, the district court granted the temporary restraining order. Lilly subsequently amended his complaint to enjoin the City from providing reimbursement for health insurance costs under resolution 93R–106.

The district court determined that the City of Minneapolis' resolutions 93R–106 and 93R–342 were *ultra vires* under Minn.Stat. § 471.61 and that providing health care coverage for same sex domestic partners contravened state public policy and violated state law. The court granted Lilly's motion for declaratory/summary judgment and for a permanent injunction. This appeal followed.

## ISSUE

May the City of Minneapolis, a home rule charter city, provide employee health care

benefits to persons not defined as "spouse" or "dependents" in a general statute concerning the grant of health care benefits to municipal employees?

## ANALYSIS

■■■ Where, as here, material facts are not in dispute, this court need not defer to the district court's application of the law. *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310 (Minn.1989). The only issue here concerns interpretation and application of Minnesota statutes and the City's charter, ordinances and resolutions.[2] The application and construction of a statute, charter, ordinance or resolution is a question of law. *Hibbing Educ. Ass'n v. Public Employment Relations Bd.*, 369 N.W.2d 527, 529 (Minn. 1985).

To determine whether the City may lawfully provide medical insurance benefits for same sex domestic partners of city employees and reimburse employees for medical insurance costs of relatives who live with them is a case of first impression, requiring an analysis of Minn.Stat. § 471.61 (1992) which deals with the same subject matter. That statute provides:

> A county, municipal corporation, town, school district, county extension committee, other political subdivision or other body corporate and politic of this state, other than the state or any department of the state, through its governing body, and any two or more subdivisions acting jointly through their governing bodies, may insure or protect its or their officers and employees, and their dependents, or any class or classes of officers, employees, or dependents, under a policy or policies or contract or contracts of group insurance or

benefits covering \* \* \* medical and surgical benefits and hospitalization insurance or benefits for both employees and dependents. \* \* \* A payment is deemed to be additional compensation paid to the officers or employees.

Minn.Stat. § 471.61, subd. 1. There should be no serious dispute that the terms "municipal corporation" and "other political subdivision or other body corporate and politic of this state" include home rule charter cities, such as the City of Minneapolis. The statute's exclusion of the state and departments of the state further clarifies that the statute encompasses all other political subdivisions, including home rule charter cities. *See Maytag Co. v. Commissioner of Taxation*, 218 Minn. 460, 464, 17 N.W.2d 37, 40 (1944) (the exclusion of one thing includes all others).

The dispute here centers on the effect of the statute's definition of those who may receive benefits. Appellants argue that the statute is permissive, that it does not require a city to provide insurance benefits and that it does not indicate legislative intent to limit a city's power to extend benefits or provide reimbursement for insurance premiums to persons not listed in the statute. To the contrary, the statute is permissive in as much as a city "may," but is not required to, provide medical insurance benefits to employees and their dependents. As the district court concluded, however, Minn.Stat. § 471.61 limits the persons to whom the City may provide health care benefits. "Where a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others." *Maytag*, 218 Minn. at 463, 17 N.W.2d at 40. The statute defines "dependents" to mean "spouse and minor unmarried children under the age of 18 years and dependent students under the age of 25

---

**2.** The Anglin appellants have raised one other issue, that being whether Lilly's arguments concerning the Minnesota Human Rights Act and the Minnesota and United States Constitutions should be stricken because Lilly is raising issues which are outside the scope of appellants' statements of the case under Minn.R.Civ.App.P. 133.03. We think not. Contrary to appellants' claim, the statement of the issues contained in an appellant's statement of the case does not limit the reviewability of issues on appeal. The nature of the appeal and the course of the trial court proceedings determine our scope of review. *See*

Minn.R.Civ.App.P. 103.04 ("appellate courts may reverse, affirm or modify the judgment or order appealed from or take any other action as the interest of justice may require"). Further, the district court here ruled in Lilly's favor on the issues appellants seek to strike. Lilly is not required to file a notice of review of these issues because they do not "adversely affect him." *See* Minn.R.Civ.App.P. 106 (prescribes a procedure for respondent to seek review of a judgment or order "which may adversely affect him"). We deny appellant's motion to strike issues discussed in Lilly's brief.

years actually dependent upon the employee." *Id.* at subd. 1a. Domestic partners and the expansive list of relatives contained in the City's resolutions are outside the definition of dependents provided by Minn.Stat. § 471.61.

The City claims that it has the authority to provide health care benefits to its employees by virtue of its charter. In *"matters of municipal concern,* home rule cities have all the legislative power possessed by the legislature of the state, save as such power is expressly or impliedly withheld." *State ex rel. Lowell v. City of Crookston,* 252 Minn. 526, 528, 91 N.W.2d 81, 83 (1958) (emphasis added). Here, the city contends that its action is of a local concern only and does not conflict with state law. We disagree.

> A municipality has no inherent powers, but only such powers as are expressly conferred by statute or are implied as necessary in aid of those powers which are expressly conferred. * * * *[I]f a matter presents a statewide problem, the implied necessary powers of a municipality to regulate are narrowly construed unless the legislature has expressly provided otherwise.*

*Welsh v. City of Orono,* 355 N.W.2d 117, 120 (Minn.1984) (emphasis added). In another case involving the City of Minneapolis, this court held that *Welsh* "requires a narrow construction" of the City's powers to regulate a "statewide problem." *City of Minneapolis Comm'n on Civil Rights v. University of Minn.,* 356 N.W.2d 841, 843 (Minn.App.1984).

■ To support its claim that its resolutions do not conflict with Minn.Stat. § 471.61, the City relies on a test provided in *American Electric Co. v. City of Waseca,* 102 Minn. 329, 113 N.W. 899 (1907). Respondent Lilly relies on the analysis contained in a more recent case, *Mangold Midwest Co. v. Village of Richfield,* 274 Minn. 347, 143 N.W.2d 813 (Minn.1966). A key factor in applying either case is whether the local legislation involves an area of statewide concern. *Id.* at 358, 143 N.W.2d at 821; *American Electric Co.,* 102 Minn. at 334, 113 N.W. at 901. Most significantly, however, if the local legislation involves a statewide problem, we must apply the supreme court's most recent directive to

"narrowly construe" the city's power to act "unless the legislature has expressly provided otherwise." *Welsh,* 355 N.W.2d at 120.

■ Political subdivisions, including the City of Minneapolis, have heretofore operated under the assumption that Minn.Stat. § 471.61 governs their ability to provide insurance benefits. Significantly, one of the city resolutions at issue here contains a mandate to "seek an affirmative inclusion of the term 'domestic partners' in state legislation on health care benefits." Minneapolis, Minn., Resolution 93R–342 (Aug. 27, 1993).

When first enacted in 1943, Minn.Stat. § 471.61 only provided insurance benefits for officers and employees of political subdivisions. 1943 Minn.Laws ch. 615, § 1. Since then, the legislature has, at the request of political subdivisions, twice amended the statute to expand the class of persons to whom a political subdivision could provide insurance benefits. The 1957 amendment added "dependents," defined as "spouse and minor unmarried children * * * actually dependent upon the employee." 1957 Minn.Laws ch. 321, § 1. The 1971 amendment added "dependent students under the age of 25 years actually dependent upon the employee." 1971 Minn.Laws, Extra Session ch. 48, § 16. Finally, in 1973, the legislature reduced the age of coverage for minor children from 19 to age 18. 1973 Minn.Laws ch. 725, §§ 68, 69. Accordingly, the district court concluded that

> the statewide application of § 471.61, and the legislature's prior amendments in accordance with the desires of state political subdivisions, indicates that the provision of insurance coverage for political subdivisions' employees and their dependents is a matter of statewide, not purely local, concern.

We agree.

Further, the city's actions also concern the statewide problem of discrimination. This court has previously held that discrimination is a statewide concern and therefore, the authority of the City of Minneapolis to combat discrimination must be narrowly construed. *City of Minneapolis Comm'n on Civil Rights,* 356 N.W.2d at 843. The preambles to both resolutions at issue here

demonstrate that the City viewed its grant of insurance benefits to same sex partners of employees as a means to combat discrimination. The preamble to the City's first resolution states that the order of the Minneapolis Commission on Civil Rights in the Anglin appellants' discrimination complaint against the City and its library board was a motivating factor to temporarily provide medical insurance reimbursement for same sex domestic partners pending a judicial resolution or settlement of that decision. Minneapolis, Minn., Resolution 93R–106 (April 2, 1993). The second resolution contained the following relevant statements in its preamble:

Whereas, the City of Minneapolis is committed to the ideal of equity in the work place; and

Whereas, the City of Minneapolis wishes to provide equal benefits for equal work, regardless of sexual orientation.

Minneapolis, Minn., Resolution 93R–342.[3] Although appellants, three of the amici and the dissent to this opinion propose that the City's grant of employee health care benefits is a purely local matter concerning the compensation of municipal employees, the impact on statewide concerns and the state legislature's previous and continuing exercise of its power to define the scope of municipal employees' health care benefits is indisputable. The issue here is not purely of a local concern.

In 1993, the Minnesota Legislature considered the issue of benefits to same sex domestic partners when it amended the Minnesota Human Rights Act to prohibit discrimination based on sexual orientation. At the same time, the legislature adopted Minn.Stat. § 363.021 which provided:

Nothing in this chapter shall be construed to * * * mean that the state of Minnesota condones homosexuality or bisexuality or any equivalent lifestyle [or to] authorize the recognition of or the right of marriage between persons of the same sex.

*Id.* at (1), (4); 1993 Minn.Laws ch. 22, § 7. Prior to the vote approving the addition of

sexual orientation to the MHRA, the senate author of the bill stated:

There is nothing in here about the domestic partners benefits. Nothing that could lead to it. There is nothing in here about homosexual marriages. In fact, the law of the State of Minnesota states very clearly that marriage must be between a man and a woman. * * * Many of you have received calls in opposition to this bill. I am aware that there is a highly motivated group of people in this state who fear what this bill would do. But I would also point out to you that the polls consistently show that most Americans oppose discrimination on the basis of sexual orientation. They may not approve of the gay life style, but they think that discrimination is wrong. And this bill, regardless of what the opponents say, is simply about discrimination. It is not an endorsement of any life style.

*Senate Floor Debate on S.F. No. 444* (March 18, 1993) (statement of Sen. Allen Spear).

Given the legislative history provided in Senator Spear's remarks and the requirements for interpretation of the sexual orientation amendments provided in Minn.Stat. § 363.021, it is apparent that the legislature did not intend to expand the list of health care benefits in Minn.Stat. § 471.61 to give the same health care benefits to employees with same sex domestic partners as are available to employees who are married. The legislature met again in 1994 and made no change to allow a grant of benefits to domestic partners. As Minn.Stat. § 471.61 stands, without inclusion of benefits to same sex domestic partners, it does not violate the MHRA prohibition against discrimination based upon sexual orientation. *Cf. Hinman v. Department of Personnel Admin.,* 167 Cal. App.3d 516, 530, 213 Cal.Rptr. 410 (1985) (denial of dental benefits does not constitute sexual orientation discrimination, but instead merely distinguishes eligibility on the basis of marriage), *pet. for rev. denied* (Cal. Aug. 15, 1985); *Phillips v. Wisconsin Personnel Comm'n,* 167 Wis.2d 205, 482 N.W.2d 121, 127 (App.1992) (it is not sexual orientation

---

**3.** Soon after passing the second resolution, the city withdrew its appeal of the City Civil Rights Commission order. *See Anglin v. City of Minne-*apolis, No. C4–93–1202 (Minn.App. Dec. 7, 1993) (order dismissing appeal).

discrimination under state law to extend employee health insurance coverage only to married spouses of state employees). In *Phillips,* the court stated:

> [W]hile she complains that she is not married to Tommerup only because she may not legally marry another woman, that is not a claim of sexual orientation discrimination in employment; it is, as we have noted earlier, a claim that the marriage laws are unfair because of their failure to recognize same-sex marriages. It is a result of *that* restriction, not the insurance eligibility limitations in the statute and the DETF rule, that Phillips is unable to extend her state employee health insurance benefits to Tommerup. And, as we said at the outset of this opinion, any change in that policy is for the legislature, not the courts.

*Phillips,* 482 N.W.2d at 127 (emphasis in original). The present marriage laws of Minnesota are consistent with these foreign cases. *Cf. Baker v. Nelson,* 291 Minn. 310, 312, 191 N.W.2d 185, 186 (1971) (state law prohibits marriage between persons of the same sex) *appeal dismissed,* 409 U.S. 810, 93 S.Ct. 37, 34 L.Ed.2d 65 (1972).

In conclusion, while the City contends that its extended list of benefit recipients is consistent with the statute, *Welsh* requires that we narrowly view the City's power to grant benefits where, as here, the grant of those benefits involves a statewide concern. *Welsh,* 355 N.W.2d at 120. Because the legislature has specifically defined "dependents," neither the City nor the courts have the power to engraft an exception to grant benefits to persons not listed as "dependents" in Minn.Stat. § 471.61. *See State v. Tennyson,* 212 Minn. 158, 161–62, 2 N.W.2d 833, 835 (1942) (court will not engraft exceptions onto a statute that has broad and comprehensive language).

## DECISION

■ A home rule charter city is exactly that—"home rule" on matters of a purely local nature. A home rule city may not exceed statutory authority by its mere fiat as was done here. *Minnesota Canal & Power Co. v. Koochiching Co.,* 97 Minn. 429, 437,

107 N.W. 405, 408 (1906). The City of Minneapolis cannot expand the statute with respect to persons who may receive medical benefits and premiums paid at the request of a city employee when the legislature by clear definition has made the subject matter one of statewide concern and has defined who may receive such benefits. Further, discrimination, as well as the definition of family relationships and dependent status, are statewide concerns. The *Welsh* doctrine requires that we narrowly construe the power of a city to legislate on a matter of statewide concern. Accordingly, the action taken here by the City, whether by resolution or ordinance, is *ultra vires,* beyond the limits of the power granted to the home rule charter city, and is without legal force or effect. *See id.* at 436, 107 N.W. at 408. Having ruled against the City for the reasons expressed in this opinion, we deem it is unnecessary, after careful review of the arguments raised by amici and the Attorney General, to consider them further.

Affirmed.

SCHUMACHER, Judge (dissenting).

The majority's decision erodes the constitutionally recognized principle of home rule: local governance of areas of local concern. Minn. Const. art. XII, § 4 provides that a local government unit may adopt a home rule charter when authorized by law. A home rule charter

> may provide for the establishment and administration of all departments of a city government, and for the regulation of all local municipal functions, as fully as the legislature might have done before home rule charters for cities were authorized.

Minn.Stat. § 410.07 (1992).

The supreme court has recognized that Minnesota's constitutional and home rule provisions grant broad municipal powers to cities that adopt home rule charters. *See, e.g., Mangold Midwest Co. v. Village of Richfield,* 274 Minn. 347, 358, 143 N.W.2d 813, 820 (1966); *City of Duluth v. Cerveny,* 218 Minn. 511, 516–18, 16 N.W.2d 779, 783 (1944); *Tousley v. Leach,* 180 Minn. 293, 294, 230

N.W. 788, 788 (1930). Significantly, a home rule charter

> has all the force of a charter granted directly by legislative act and *in all matters pertaining to municipal government the provision of the home rule charter overrides general laws with respect to the same subject.*

*Northern Pac. Ry. v. City of Duluth (In re Condemnation by the City of Duluth),* 153 Minn. 122, 125, 189 N.W. 937, 939 (1922) (emphasis added), *quoted in Gadey v. City of Minneapolis,* 517 N.W.2d 344, 348 (Minn. App.1994), *pet. for rev. denied* (Minn. Aug. 24, 1994).

A home rule charter city's authority to act is not dependent on a specific statutory grant if it is acting pursuant to authority in its charter. *Borgelt v. City of Minneapolis,* 271 Minn. 249, 253–58, 135 N.W.2d 438, 441–44 (1965). Where a home rule charter covers a subject matter, there is a presumption that the charter "supersede[s] all general laws on the subject * * * unless otherwise expressed." *Turner v. Snyder,* 101 Minn. 481, 484, 112 N.W. 868, 870 (1907).

The City contends that it acted pursuant to the authority in its charter when it granted the employee compensation/benefits at issue here. I agree. The City's charter is replete with provisions regarding compensation of employees. *See, e.g.,* Minneapolis, Minn., City Charter chs. 6 § 2, 7 § 5, 9 § 7, 15 § 1, 16 § 1, 17 (1991 & Supp.1994); *see also id.* at ch. 4 §§ 5, 17 (charter provisions authorizing city council to pass resolutions "for the government and good order of the City * * * as it shall deem expedient"); Minneapolis, Minn., Code of Ordinances § 20.10 (1991 & Supp.1994) (city council to prescribe compensation for city employees and officers).

There could be no dispute here that the benefits granted by the City's resolutions 93R–106 and 93R–342 are compensation. The record reflects that employees will incur personal income tax liability for receipt of insurance reimbursements for blood relatives and for domestic partner health care insurance premiums paid by the City pursuant to these resolutions.

There is no basis to conclude that the legislature intended to preempt a home rule charter city's power to provide compensation to its employees in the form of taxable healthcare benefits. In considering the issue of preemption, the Minnesota Supreme Court stated:

> It is imperative, if we are to give faithful effect to legislative intent, that the legislature should manifest its preemptive intent in the clearest terms. We can be spared the sometimes elusive search for such intent if it is declared by express terms in the statute. And where that is not done in the enactments of future legislatures, we shall be increasingly constrained to hold that statutes and ordinances on the same subject are intended to be coexistent.

*State v. Dailey,* 284 Minn. 212, 214–15, 169 N.W.2d 746, 748 (1969), *quoted in State v. Westrum,* 380 N.W.2d 187, 191 (Minn.App. 1986).

As appellants note, there are numerous statutes that, unlike the statute in question, expressly limit the power of a home rule charter city. *See, e.g.,* Minn.Stat. § 471.633 (1992) (providing that the "legislature preempts all authority of a home rule charter" city to regulate firearms except as expressly provided by that statute); Minn.Stat. § 471.66, subd. 3 (1992) (providing that no elected officials, including those of "a home rule charter city * * * may receive monetary compensation for unused vacation or sick leave accruals"); Minn.Stat. § 471.665, subd. 1 (1992) (defining maximum amount officer may receive for mileage allowances, including employees and officers of "home rule charter * * * city"). The legislature's failure to use preemptive language in Minn.Stat. § 471.61 indicates its lack of preemptive intent. *See Dailey,* 284 Minn. at 215, 169 N.W.2d at 748.

It is well-settled that a home rule city cannot pass legislation that "permits what [a] statute *forbids.*" *Mangold,* 274 Minn. at 352, 143 N.W.2d at 816 (emphasis added). There is no language in Minn.Stat. § 471.61 that forbids a home rule charter city from expanding the list of employee healthcare benefits. Further, a city's ordinance or resolution does not conflict with state law if it is "merely additional and complementary to" a stat-

ute. *Id.* at 352, 143 N.W.2d at 817; *see also Power v. Nordstrom,* 150 Minn. 228, 232, 184 N.W. 967, 969 (1921) (where general statute prohibited doing certain things on Sunday but was silent as to indoor exhibition of motion pictures, city could nevertheless pass local legislation to prohibit such exhibition on Sundays); *Markley v. City of St. Paul,* 142 Minn. 356, 357–58, 172 N.W. 215, 215–16 (1919) (home rule charter city could · offer more compensation than provided in Workmen's Compensation Act first enacted after city charter).

The majority concludes that such compensation is a matter of statewide concern requiring application of *Welsh v. City of Orono,* 355 N.W.2d 117 (Minn.1984). *Welsh* is distinguishable. *Welsh* involved the construction of the grant of authority to a statutory city under Minn.Stat. § 412.221 (1982). *Id.* at 121. A "statutory city" was defined as a city that had not adopted a home rule charter. Minn.Stat. § 412.016, subd. 1 (1982). This definition has not changed. *Id.* (1992). The City of Minneapolis has adopted a home rule charter and passed the resolutions under dispute while acting by authority of that charter. Thus, the body of law pertaining to the powers of a home rule charter city to act under its charter applies, not *Welsh.*

*Welsh* also is distinguishable because the City's action here was of local concern. "[O]nce [a] municipality is granted a charter with a general welfare clause * * * that clause will be construed liberally." *Mangold,* 274 Minn. at 358, 143 N.W.2d at 820. The issue is not whether the subject matter of the resolutions is "purely local" or whether there is some statewide application or concern that may be present, as the majority contends, but whether the subject matter being regulated is "solely a matter of state concern" and whether the local regulation "would have unreasonably adverse effects upon the general populace of the state." *Id.*

I would conclude that the grant of medical benefits to city employees is solely of local concern and pertaining to management of municipal government. As amicus curiae Hennepin County aptly argues, the authority to define the scope of employee compensation, including benefits, is of particular importance to local government because of its impact on the "ability to attract and retain the employees needed to function at the highest level." *Cf. Christensen v. Minneapolis Mun. Employees Retirement Bd.,* 331 N.W.2d 740, 747 (Minn.1983) (retirement benefits affect the city's ability to "attract and retain good employees").

The legislature's series of amendments to Minn.Stat. § 471.61 to increase the list of persons who may be covered under a municipality's grant of employee health insurance is of little significance. Minn.Stat. § 471.61 is a general statute that applies to the numerous nonchartered entities listed therein. Had the legislature intended this statute to provide a limited list, or to limit the power of a home rule charter city, it could have clearly stated so as it has in other statutes cited above. *See, e.g.,* Minn.Stat. § 471.665.

Lilly contends that it is of statewide concern to limit the burden on taxpayers. Only city taxes, however, are used to compensate its employees. "Taxation for municipal purposes is purely a matter of municipal character." *State ex rel. City of Minneapolis v. Erickson,* 157 Minn. 200, 206, 195 N.W. 919, 921 (1923). Lilly's remedy is at the ballot box.

Finally, the claim that the City's resolution impermissibly impacts state law and/or policy concerning discrimination and the definition of family and marriage is without merit. It is irrelevant that the state legislature did not intend to expand the definition of dependents contained in Minn.Stat. § 471.61, subd. 1a when it amended the Minnesota Human Rights Act to prohibit discrimination based on sexual orientation. The City was not acting under the Minnesota Human Rights Act or Minn.Stat. § 471.61, but instead voluntarily granted the challenged benefits/compensation under authority provided in its charter and ordinances. The issue is whether the City of Minneapolis may *voluntarily* provide these benefits to its employees.[1]

---

1. Although the City apparently passed the disputed resolutions in response to the order of its Civil

Rights Commission, which found that the City's failure to provide health insurance for same sex

The majority's reliance on a comment in *City of Minneapolis Comm'n on Civil Rights v. University of Minn.*, 356 N.W.2d 841, 843 (Minn.App.1984), characterizing civil rights as a statewide problem is misplaced. In that case, the Minneapolis Commission on Civil Rights attempted to investigate alleged civil rights violations at the University of Minnesota. Here, the City's actions pertain to the City's internal affairs and relate to a purely local matter, administration of city government, and not an issue "solely of statewide concern." *See Mangold*, 274 Minn. at 358, 143 N.W.2d at 820 (providing "solely of statewide concern" standard). The City has not purported to change state laws prohibiting same sex marriage. State law and policy do not prohibit the City from providing benefits to same sex domestic partners or to blood relations who live with employees.

I would reverse the permanent injunction.

partners of its employees was discrimination based upon sexual orientation, the City is not arguing now that a law required it to provide these disputed benefits. Its position is that it has a right to voluntarily offer group health insurance benefits to same sex domestic partners of its employees.